# THE ROANOKE.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

No. 123. Submitted December 17, 1902.—Decided March 2, 1903.

The following propositions in regard to lien for supplies furnished to vessels may be considered as settled:

(1.) That by the maritime law, as administered in England and in this country, a lien is given for necessaries furnished a foreign vessel upon the credit of such vessel; and that in this particular the several States of the Union are treated as foreign to each other.

(2.) That no such lien is given for necessaries furnished in the home port of the vessel, or in the port in which the vessel is owned, registered, enrolled or licensed, and the remedy in such case, though enforceable in the admiralty, is *in personam* only.

(3.) That it is competent for the States to create liens for necessaries furnished to domestic vessels, and that such liens will be enforced by the courts of admiralty under their general jurisdiction on the subject of necessaries.

Where, however, Congress has dealt with a subject within its exclusive power, or where such exclusive power is given to the Federal courts, as in cases of admiralty and maritime jurisdiction, it is not competent for

the States to invade the domain of such jurisdiction and enact laws which in any way trench upon the power of the Federal courts.

The statutes of the State of Washington, sections 5953, 5954, 2 Ballinger's Code, giving an absolute lien upon foreign vessels for work done or material furnished at the request of a contractor or sub-contractor, and making no provision for the protection of the owner in case the contractor has been paid the full amount of his bill before notice of the claim of the sub-contractor is received, in so far as it attempts to control the administration of the maritime law by creating and superadding conditions for the benefit of a particular class of creditors, and thereby depriving the owners of vessels of defences to which they would otherwise have been entitled, is an unlawful interference with the exclusive jurisdiction of all admiralty and maritime cases which is vested by the Constitution in the Federal courts, and to that extent such statute is unconstitutional and void.

THIS was a libel *in rem* for materials, and also for work and labor, alleged to have been furnished by the libellants King and Winge in the repair of the steamship Roanoke, to certain contractors with the owners, who had full charge of the alteration and repair of the steamship.  An intervening libel was also filed by one Fraser for labor and material furnished under the same conditions.

The cases resulted in decrees for the libellants, from which the North American Transportation and Trading Company, owner of the steamship, appealed directly to this court, and the following facts were found :

" The North American Transportation and Trading Company appeared as claimant and owner and the vessel was released upon its stipulation.

" It admitted all the allegations of the libel except that the work was done on the credit of the ship, which it denied except that it admitted that libellants had acted under the belief that they had a lien by virtue of law.  It then alleged its incorporation and existence under the laws of the State of Illinois, the residence there at all times of its president and general manager, its maintaining only agencies at Seattle and at other places in Alaska and Canada, and its enjoying a high credit.  The Roanoke it alleged to be an ocean-going vessel registered at Chicago, Illinois, under the navigation laws of the United States, with the name of Chicago painted on her stern.  She was al-

leged to have been purchased by claimant in 1898 on the Atlantic coast, and, upon the Pacific coast since that time, employed between Seattle and the mouth of the Yukon in the summer, and between San Francisco and southern ports in the winter. It was further alleged that the claimant had never given any order for the material and labor described in the libel, and that these were furnished on the order of the contractor, who, before the filing of the libel and without any knowledge by claimant of these unpaid claims, had been paid by this claimant for these materials and labor in full. It was alleged in conclusion that the lien claimed by libellants was claimed under sections 5953 and 5954 of Ballinger's Code and Statutes of Washington, that such a lien was in this instance void, being in violation of the eighth section of the first article of the Constitution of the United States, conferring upon Congress the power to regulate commerce among the several States, was an illegal burden upon interstate commerce, and in violation also of the fourteenth article of the Constitution of the United States, as depriving claimant of its property without due process of law and without its equal protection, and was in violation of the second section of the third article of the Constitution conferring on the courts of the United States admiralty and maritime jurisdiction.

"To the intervening libel of Fraser the same answer was made.

"To each of these answers respectively the libellants and intervening libellant excepted as insufficient, and the whole of each, to constitute any answer or defence to the libel.

"The exceptions were sustained, the claimant elected to stand on its answer and a decree was entered against it and its stipulators for the whole sum claimed in the libels."

*Mr. Frederick Bausman*, with whom *Mr. Daniel Kelleher* was on the brief, for appellant.

The Roanoke was a non-resident ship. Registered in a port, and belonging to a citizen, of Illinois, she was property only of the State of Illinois. *Hays* v. *Pacific M. S. Co.*, 17 How. 596; *Morgan* v. *Parham*, 16 Wall. 471. However much she might

loiter in other waters, she was not liable even to taxation outside of Illinois, for she had no other *situs*. *The Jennie Middleton*, 94 Fed. Rep. 683 ; *The Havana*, 92 Fed. Rep. 1007 ; *Pullman Co.* v. *Pennsylvania*, 141 U. S. 32.

This court has jurisdiction. The amount involved is sufficient. *The Paquette Habana*, 175 U. S. 677. That the constitutional question was raised by the defence and not by libellants is no objection. Direct appeal may be taken no matter which party raised such question in the lower court. *Loeb* v. *Trustees*, 179 U. S. 472; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

The Washington statute offends the commerce clause of the Constitution. Interstate commerce is one province which, relinquished by the States, has been everywhere explored, occupied and subjected by its new possessor. Nowhere is anything left uncertain. The regulations of government are wrought out in the finest detail. Nothing has been too small. The placing of buoys, the licensing of masters, engineers and pilots, and even the wages of seamen, have become the subject of statutes. *Gibbons* v. *Ogden*, 9 Wheat. 1 ; *The Genessee Chief*, 12 How. 443. The maritime laws of the national government cannot even be enforced by the States. No more can the uncodified jurisprudence of the seas, for courts of admiralty belong to the Federal government alone.

*Railroad Co.* v. *Maryland*, 21 Wall. 456, 470, is quoted with approval even by that majority in this court who conceded to the States certain rights as to commerce by land. *Pullman Co.* v. *Pennsylvania*, 141 U. S. 32. Cars that were owned in one State might be taxed if moving in another, but the ships of another State never.

The very sale, hypothecation and transfer of ships is regulated by the navigation laws of the Union, and those laws have their origin in the interstate commerce provisions of the Federal Constitution. Why should one State be allowed, then, to fasten liens upon vessels of other States ? Does this not directly invade the interstate commerce right of the general government ?

Any other view seems full of danger. State liens might become unreasonable.

Hard as it is to conceive that the Federal government will ever permit the encroachment of state liens where both commerce and admiralty are concerned, it is altogether too hard to imagine that they will permit such liens to be unreasonable in themselves. *The Belfast,* 7 Wall. 624.

This law shows it is one of the most unreasonable ever enacted of its kind.

The Washington statute invades the jurisdiction in admiralty. Although a State may enact lien laws as to ships owned within it has long been settled, but no decision can be construed as authorizing also liens on ships owned without the State. Indeed, it is questionable whether such liens were intended to be supported, even within the State, beyond the home port. *The General Smith,* 4 Wheaton, 438 ; *Peyroux* v. *Howard,* 7 Peters, 342 ; *The Belfast,* 7 Wall. 624 ; *The Lottawanna,* 21 Wall. 558 ; *The J. E. Rumbell,* 148 U. S. 1 ; *The Chusan,* 2 Story, 455.

This case was cited with approval twelve years later, in *Steamboat New York* v. *Rae,* 18 How. 223, in which a local rule of navigation of New York was held good as to domestic, and bad as to foreign, ships ; in *Hall* v. *De Cuir,* 95 U. S. 485, in 1877 ; in *The Globe* by Justice Nelson, 2 Blatch. 427 ; and in *The Selah,* 4 Sawyer, 40 ; *The Lyndhurst,* 48 Fed. Rep. 839 ; *The Electron,* 74 Fed. Rep. 689.

In conclusion (1) that as applied to vessels of other States, a local lien invades the interstate commerce powers of the Federal government ; (2) that even if any such law can be valid, this one cannot because it is not a reasonable one ; (3) that, as regards the admiralty jurisdiction of the Federal government, such laws, whether reasonable in terms or not, are void as to vessels of other States, because wholly unnecessary, and in their nature incompatible with the complete system of admiralty and its policy.

*Mr. Harold Preston,* with whom *Mr. Benton Embree* and *Mr. Clarence S. Preston* were on the brief, for appellees.

This court does not have jurisdiction. *Baltimore R. Co.* v. *Hopkins*, 130 U. S. 210; *State of Arkansas* v. *Schlierholz*, 179 U. S. 598, 601; *City of Lampasas* v. *Bell*, 180 U. S. 276, 281.

I. The statute of Washington does not violate the commerce clause of the Constitution. It is well settled that the laws of the State in which personal property is situated govern respecting the transfer of title to and liens thereon, even where the owner is a non-resident of the State. *Walworth* v. *Harris*, 129 U. S. 355; *Brown* v. *Smart*, 145 U. S. 454; *Pullman Company* v. *Pennsylvania*, 141 U. S. 32; *The Iris*, 100 Fed. Rep. 104, 106; *Green* v. *Van Buskirk*, 5 Wall. 307; 7 Wall. 139.

In determining the relative power of the States and of Congress concerning foreign and interstate commerce, the place of residence of the owner of the instruments of such commerce is wholly immaterial. A vessel is none the less engaged in interstate commerce because her owner resides in one of the States between which such commerce is carried on. Therefore, in considering whether the statute of the State of Washington conferring liens on vessels violates the commerce clause of the Constitution, the place of residence of the owner may be laid aside.

The uniform current of decisions of this court is to the effect that in those respects in which Congress has not exercised its power to regulate interstate and foreign commerce, state legislation is valid so long as it affects such commerce only indirectly or remotely. *Kidd* v. *Pearson*, 128 U. S. 1, and citations; *Lake Shore R. Co.* v. *Ohio*, 173 U. S. 285, and citations; *Missouri R. Co.* v. *Haber*, 169 U. S. 613; *Louisville R. Co.* v. *Kentucky*, 161 U. S. 677; *Wilkerson* v. *Rohrer*, 140 U. S. 545.

This reserved power in the States is not limited to the right to legislate concerning the public health, morals or safety, but extends also to and includes the power to legislate respecting matters of mere convenience and the prosperity of the people. *Lake Shore R. Co.* v. *Ohio*, 173 U. S. 285.

Counsel for appellant admits this right on the part of the State to legislate as applied to commerce on land, but denies the right respecting commerce by water; there is no ground for such a distinction. *Railroad Company* v. *Maryland*, 21

Wall. 456, cited by appellant, distinguished, and see *Sherlock v. Alling*, 93 U. S. 99.

The court draws a distinction between the effect of taxation upon the instruments of interstate commerce, and the regulation of such commerce by other means. *Missouri R. Co. v. Haber*, 169 U. S. 613, 632; *Louisville R. Co. v. Kentucky*, 161 U. S. 677, 701; *Pittsburgh Coal Co. v. Louisiana*, 156 U. S. 590, 598–599.

Compulsory pilotage laws of a State, while admitted to be regulations of commerce, are held valid so long as Congress refrains from legislating on the subject. *Cooley v. Board of Wardens*, 12 Howard, 299, 320; *Huus v. Steamship Co.*, 182 U. S. 392; *The China*, 7 Wall. 53; *Ex parte McNeil*, 13 Wall. 236; *Pacific Mail S. Co. v. Joliffe*, 2 Wallace, 450. See also as to materialmen statutes, *The Lottawanna*, 21 Wall. 558; *McRae v. Dredging Co.*, 86 Fed. Rep. 344, 350; *The Robert Dollar*, 115 Fed. Rep. 218.

The statute is not unreasonable, in that by its terms the lien conferred continues for a period of three years. In this instance the liens against the Roanoke were asserted by the commencement of these proceedings within five months after the causes of action accrued. The record fails to show that this lapse of time was unreasonable. No claim of *laches* on the part of the appellees is made. During this period the vessel was in foreign waters, beyond the jurisdiction of the court. No change in the ownership of the vessel took place. No claim is made that the appellant was without knowledge that the appellees furnished the materials and performed the services set forth in the libel. Nor are any facts set forth in the answers to show that the contractors, at whose instance the appellees furnished the materials and rendered the services, were obligated to pay appellees therefor.

II. The statute does not invade the jurisdiction in admiralty.

While a state statute cannot convert a contract non-maritime in character by the general principles of the maritime law, into a maritime one, for that would be to extend the jurisdiction in admiralty, it is now well settled that a lien conferred by a state statute as incident to a maritime contract, is, for all practical

purposes, a maritime lien, and that such a lien is cognizable in the admiralty. *The J. E. Rumbell*, 148 U. S. 1, 20; *The Glide*, 167 U. S. 606; *The Robert Dollar*, 115 Fed. Rep. 218.

The imposition by a local statute of a lien upon foreign vessels, so long as such lien is consistent with the principles of the general maritime law, is no more an invasion of the admiralty jurisdiction than the creation by such statute of a lien upon domestic vessels. *The Chusan*, 2 Story, 455; *The Lyndhurst*, 48 Fed. Rep. 839; *Steamboat New York* v. *Rae*, 18 How. 223; *Hall* v. *De Cuir*, 95 U. S. 585, cited by appellant distinguished; and see *Workman* v. *New York*, 179 U. S. 552, in which it was held that by the maritime law the city was liable, and that the local law, which, as construed by the state court, exempted the city from liability, was not applicable because it deprived parties of rights conferred by the admiralty law. In other words, because it was inconsistent with the principles of the admiralty law.

We contend, therefore, (1) that this court is without jurisdiction to review these proceedings; (2) that the statute of Washington is not a regulation of commerce within the meaning of the Constitution; and (3) that such statute does not invade the jurisdiction in admiralty.

Mr. Justice Brown, after making the foregoing statement, delivered the opinion of the court.

This case is appealed directly from the District Court to this court under that clause of section 5 of the Court of Appeals Act, which permits such appeal "in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States." No additional significance is given to the appeal by certain questions certified by the District Court, as the power to certify is only given in cases appealed upon questions of jurisdiction. But as the case is properly before us upon direct appeal from the District Court, we proceed to dispose of the question of the constitutionality of the law of Washington, under which these proceedings were taken.

By that law, 2 Ballinger's Code, secs. 5953 and 5954—

"5953. All steamers, vessels, and boats, their tackle, apparel, and furniture, are liable,—

\*    \*    \*    \*    \*    \*    \*    \*

"3. For work done or material furnished in this State, for their construction, repair, or equipment, at the request of their respective owners, masters, agents, consignees, contractors, sub-contractors, or other person or persons having charge in whole or in part of their construction, alteration, repair, or equipment; and every contractor, sub-contractor, builder, or person having charge, either in whole or in part, of the construction, alteration, repair, or equipment of any vessel shall be held to be the agent of the owner, for the purposes of this chapter;

\*    \*    \*    \*    \*    \*    \*    \*

"Demands for these several causes constitute liens upon all steamers, vessels, and boats, and their tackle, apparel, and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued.

"5954. Such liens may be enforced, in all cases of maritime contracts or service, by a suit in admiralty, *in rem*, and the law regulating proceedings in admiralty shall govern in all such suits; and in all cases of contracts or service not maritime, by a civil action in any District Court of this Territory."

In this connection the following propositions may be considered as settled:

1. That by the maritime law, as administered in England and in this country, a lien is given for necessaries furnished a foreign vessel upon the credit of such vessel; *The General Smith*, 4 Wheat. 438; *The Grapeshot*, 9 Wall. 129; Gen. Admiralty Rule 12, and that in this particular the several States of this Union are treated as foreign to each other. *The General Smith*, 4 Wheat. 438; *The Kalorama*, 10 Wall. 204, 212.

2. That no such lien is given for necessaries furnished in the home port of the vessel, or in the port in which the vessel is owned, registered, enrolled or licensed, and the remedy in such

case, though enforceable in the admiralty, is *in personam* only. *The Lottawanna,* 21 Wall. 558; *The Edith,* 94 U. S. 518. This is a distinct departure from the Continental system, which makes no account of the domicil of the vessel, and is a relic of the prohibitions of Westminster Hall against the Court of Admiralty, to the principle of which this court has steadily adhered.

3. That it is competent for the States to create liens for necessaries furnished to domestic vessels, and that such liens will be enforced by the courts of admiralty under their general jurisdiction over the subject of necessaries. *The General Smith,* 4 Wheat. 438; *The Planter,* (*Peyroux* v. *Howard,*) 7 Pet. 324; *The St. Lawrence,* 1 Black, 522; *The Lottawanna,* 21 Wall. 558; *The Belfast,* 7 Wall. 624; *The J. E. Rumbell,* 148 U. S. 1, 12. The right to extend these liens to foreign vessels in any case is open to grave doubt. *The Chusan,* 2 Story, 455; *The Lyndhurst,* 48 Fed. Rep. 839.

The question involved in this case, however, is whether the States may create such liens as against foreign vessels, (vessels owned in other States or countries,) and under such circumstances as would not authorize a lien under the general maritime law. The question is one of very considerable importance, as it involves the power of each State, which a vessel may visit in the course of a long voyage, to impose liens under wholly different circumstances and upon wholly different conditions. In the case under consideration the vessel was owned by an Illinois corporation, enjoying a high credit, and maintaining agencies at Seattle and at other places in Alaska and Canada. The Roanoke was an ocean-going vessel, registered at Chicago under the navigation laws of the United States, with the name "Chicago" painted on her stern, although she was engaged in trade upon the Pacific coast between Seattle and the mouth of the Yukon in summer, and between San Francisco and southern ports in winter. Neither the owner nor master nor other officers of the vessel had given an order for the material and labor set forth in the libel, which were furnished upon the order of a contractor, who, before the filing

of the libel and without any knowledge by the owner of these unpaid claims, *had been paid in full for these claims.*

Although this court has never directly decided whether materials and labor furnished by workmen or sub-contractors constitute a lien upon a vessel — in other words, whether the contractor can be regarded as an agent of the vessel in the purchase of such labor and materials—there is a general consensus of opinion in the state courts and in the inferior Federal courts that labor and materials furnished to a contractor do not constitute a lien upon the vessel, unless at least notice be given to the owner of such claim before the contractor has received the sum stipulated by his contract. *Smith* v. *The Steamer Eastern Railroad*, 1 Curtis, 253; *Southwick* v. *The Clyde*, 6 Blackf. 148; *Hubbell* v. *Denison*, 20 Wend. 181; *Burst* v. *Jackson*, 10 Barb. 219; *The Brig Whitaker*, 1 Sprague, 229; *The Whitaker*, 1 Sprague, 282; *Harper* v. *The New Brig*, Gilpin, 536; *Ames* v. *Swett*, 33 Maine, 479; *Squire* v. *One Hundred Tons of Iron*, 2 Ben. 21; *The Marquette*, Brown's Adm. 364.

The injustice of permitting such claims to be set up is plainly apparent. The master is the agent of the vessel and its owner in more than the ordinary sense. During the voyage he is in fact the *alter ego* of his principal. He is entrusted with an uncontrolled authority to provide for the crew, and for the preservation and repair of the ship. He engages the cargoes, receives the freight, hires and pays his crew, and is entrusted perhaps for years with the command and disposition of the vessel. With full authority to bind the vessel, his position is such that it is almost impossible for him to acquaint himself with the laws of each individual State he may visit, and he has a right to suppose that the general maritime law applies to him and his ship, wherever she may go, unhampered by laws which are mainly intended for local application, or for domestic vessels. Local laws, such as the one under consideration, ordinarily protect the ship by requiring notice of the claim to be filed in some public office, limiting the time to a few weeks or months within which the laborer or sub-contractor may proceed against her, requiring notice to be given of the claim, before the contractor himself has been paid, and limiting his recovery

to the amount remaining upaid at the time such notice is received. The statute of Washington, however, provides for an absolute lien upon the ship for work done or material furnished at the request of the contractor or sub-contractor, and makes no provision for the protection of the owner in case the contractor has been paid the full amount of his bill before notice of the claim of the sub-contractor is received. The finding in this case is that the contractor, who had agreed in consonance with the usual course of business, to make the repairs upon this vessel, had been paid in full by the claimant. The injustice of holding the ship under the circumstances is plainly manifest.

Not only is the statute in question obnoxious to the general maritime law in declaring every contractor and sub-contractor an agent of the owner, but it establishes a new order of priority in payment of liens, abolishes the ancient and equitable rule regarding "stale claims," and permits the assertion of a lien at any time within three years, regardless of the fact that the vessel may have been sold to a *bona fide* purchaser, not only without notice of the claim, but without the possibility of informing himself by a resort to the public records. It also gives, or at least creates the presumption of, a lien, though the materials be furnished upon the order of the owner in person.

No opinion upon this subject can afford to ignore the admirable discussion of Mr. Justice Story in the case of *The Chusan*, 2 Story, 455, in which he refused to apply to a Massachusetts vessel a law of the State of New York, requiring a lien for supplies to be enforced before the vessel left the State :

"This statute is, as I conceive, perfectly constitutional, as applied to cases of repairs of domestic ships, that is, of ships belonging to the ports of that State. . . . But in cases of foreign ships, and supplies furnished to them, the jurisdiction of the courts of the United States is governed by the Constitution and laws of the United States, and is, in no sense governed, controlled, or limited by the local legislation. . . . For myself, I can only say, that during the whole of my judicial life, I have never, up to the present hour, heard a single doubt breathed upon the subject." To the same effect is *The Lyndhurst*, 48 Fed. Rep. 839 ; *The Kate*, 56 Fed. Rep. 614.

While no case involving this precise question seems to have arisen in this court, we have several times had occasion to hold that where Congress has dealt with a subject within its exclusive power, or where such exclusive power is given to the Federal courts, as in cases of admiralty and maritime jurisdiction, it is not competent for States to invade that domain of legislation, and enact laws which in any way trench upon the power of the Federal government. Cases arising in other branches of the law furnish apt analogies. The principle is stated in a nutshell by Chief Justice Marshall in *Sturges* v. *Crowninshield,* 4 Wheat. 122, 193. "But it has never been supposed that this concurrent power of legislation extended to every possible case in which its exercise by the States has not been expressly prohibited. The confusion resulting from such a practice would be endless. . . . Whenever the terms in which a power is granted to Congress, or the nature of the power, require that it should be exercised exclusively by Congress, the subject is as completely taken from the state legislatures as if they had been expressly forbidden to act on it. This was said of a bankrupt law of New York which assumed to discharge the debtor from all liability for debts previously contracted, notwithstanding the Constitution had vested the power in Congress of establishing uniform laws on the subject of bankruptcy. It was held that the States had a right to pass bankrupt laws until the power had been acted upon by Congress, though the law of New York discharging the debtor from liability was held to be void as impairing the obligation of prior contracts within the meaning of the Constitution.

In *Hall* v. *DeCuir,* 95 U. S. 485, 498, it was said that, inasmuch as interstate commerce is regulated very largely by Congressional legislation, it followed that such legislation must supersede all state legislation upon the same subject, and, by necessary implication, prohibit it, except in cases where the legislation of Congress manifests an intention to leave some particular matter to be regulated by the several States, as, for instance, in the case of pilotage. *Cooley* v. *Board of Wardens,* 12 How. 299. Upon this principle it was held that a law of Louisiana excluding colored passengers from the cabin set

apart for the use of whites during the passage of steamboats down the Mississippi, was a regulation of interstate commerce, and therefore unconstitutional. To the same effect is *Sinnot* v. *Davenport*, 22 How. 227. In the subsequent cases of *Louisville &c. Railway* v. *Mississippi*, 133 U. S. 587, and *Plessy* v. *Ferguson*, 163 U. S. 537, state laws requiring separate railway carriages for the white and colored races were sustained upon the ground that they applied only between places in the same State.

In the very recent case of *Easton* v. *Iowa*, 188 U. S. 220, it was held that a state law punishing presidents of banks receiving deposits of money at a time when the bank was insolvent, and when such insolvency was known to them, was unconstitutional as applied to national banks whose operations were governed exclusively by acts of Congress. Said Mr. Justice Shiras (p. 231): "But we are unable to perceive that Congress intended to leave the field open for the States to attempt to promote the welfare and stability of national banks by direct legislation. If they had such power it would have to be exercised and limited by their own discretion, and confusion would necessarily result from control possessed and exercised by two independent authorities." See also *Farmers' &c. Bank* v. *Dearing*, 91 U. S. 29; *McCulloch* v. *Maryland*, 4 Wheat. 316, 425.

The following cases are also to the same general effect: *Degant* v. *Michael*, 2 Indiana, 396; *State* v. *Pike*, 15 N. H. 83; *Lynch* v. *Clarke*, 1 Sand. Ch. 583, 644; *Jack* v. *Martin*, 12 Wend. 311; *Ex parte Hill*, 38 Alabama, 429, 450; *People* v. *Fonda*, 62 Michigan, 401. Although it is equally true that where Congress, having the power, has exercised it but incidentally, and obviously with no intention of covering the subject, the States may supplement its legislation by regulations of their own not inconsistent with it. *Reid* v. *Colorado*, 187 U. S. 137.

Bearing in mind that exclusive jurisdiction of all admiralty and maritime cases is vested by the Constitution in the Federal courts, which are thereby made judges of the scope of such jurisdiction, subject, of course, to Congressional legislation, the statute of the State of Washington, in so far as it attempts to

control the administration of the maritime law by creating and superadding conditions for the benefit of a particular class of creditors, and thereby depriving the owners of vessels of defences to which they would otherwise have been entitled, is an unlawful interference with that jurisdiction, and to that extent is unconstitutional and void.

*The decree of the District Court is therefore reversed, and the case remanded to that court wi*ʰ*. directions to dismiss the libels.*

MR. JUSTICE HARLAN concurred in the result.