## PLUMMER v. NORTHERN PAC. RY. CO.

(Circuit Court, W. D. Washington, N. D. March 2, 1907.)

### No. 1,430.

**1. COMMERCE—CONSTITUTIONAL LAW—EMPLOYER'S LIABILITY ACT.**

Employer's Liability Act (Act June 11, 1906, c. 3073, 34 Stat. 232), making interstate carriers liable for injuries to employés, notwithstanding the latter's negligence, if the carrier's negligence was gross in comparison with that of the employé, is not unconstitutional as not within the power of Congress conferred by the commerce clause of the federal Constitution.

**2. CONSTITUTIONAL LAW—RETROACTIVE STATUTES.**

A retroactive statute is not unconstitutional unless its effect would be a deprivation of life, liberty, or property, contrary to the fifth amendment of the federal Constitution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 526.]

**3. SAME—DEPRIVATION OF PROPERTY.**

The passage of a law taking away defenses to civil actions based on rules of law which are purely arbitrary does not constitute a deprivation of property without due process of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 925.]

**4. STATUTES—EMPLOYER'S LIABILITY ACT—RETROACTIVE OPERATION.**

Employer's Liability Act (Act June 11, 1906, c. 3073, § 2, 34 Stat. 232) declares that in all actions subsequently brought against any common carrier, to recover damages for personal injuries to an employé, etc., the fact that the employé may have been guilty of contributory negligence shall not bar a recovery where his negligence was slight, and that of the employer was gross in comparison; but the damages shall be diminished in proportion to the amount of negligence attributable to such employé. *Held*, that such act created a new right and a new obligation, and did not merely deprive the employer of an arbitrary defense previously existing under rules of law, and therefore, should not be construed to operate retroactively.

At Law. Action to recover damages for a personal injury alleged to have been caused by negligence of the defendant in the operation of its railroad, the plaintiff being at the time of the injury in the service of the defendant as a brakeman. Heard on defendant's petition for a new trial, after a verdict in favor of the plaintiff for $5,000. Petition granted.

Elias A. Wright and Herbert E. Snook, for plaintiff.
Carroll B. Graves, for defendant.

HANFORD, District Judge. The plaintiff suffered a painful injury while working for the Northern Pacific Railway Company, as a brakeman on one of its trains, at Seattle, in the month of March, 1906. This action was commenced in August, 1906, to recover compensation for said injury, on the alleged ground that it was caused by the negligence of the defendant in failing to keep its track and railway in a condition to be reasonably safe for the employés of the company required to operate its trains. The effects of the injury are permanent; the plaintiff's left leg having been mangled and severed from his body by a car wheel passing over it. By his complaint and the arguments of his counsel upon the trial, the plaintiff claimed damages in the sum of $30,000. The jury awarded him $5,000, which sum is less than probably would have been awarded, if it had not been proved that his personal negligence was a contributing cause of the mishap; and a verdict for the defendant on the ground that plaintiff's contributory negligence had been clearly proved by all the evidence introduced, including his own testimony, would have been directed, if the court had not been influenced to refuse to so direct the jury, by consideration of the act of Congress of June 11, 1906, commonly called "The Employer's Liability Act" (Act June 11, 1906, c. 3073, 34 Stat. 232), which makes important changes in the law applicable to common carriers engaged in interstate and foreign commerce. The case was submitted to the jury under instructions which assumed that said act is valid, and applicable to the case.

A petition to set the verdict aside has been interposed, assigning numerous grounds, the most important of which are that said act is unconstitutional, and totally void, and that the court misconstrued the act in ruling that it is applicable to this case; the specifications of the latter ground being that the injury antedated the enactment of the statute referred to, and it should not have been held to be retroactive in effect, and the plaintiff did not by his complaint clearly set forth a cause of action based upon said statute, and it was not proved that the particular train upon which the plaintiff was employed, and by which he was injured, was in use at the time as a carrier of merchandise or commodities pertaining to interstate or foreign commerce, and that by the terms of said act the operation of a railway within a state is not subject to its provisions except when carrying on interstate and foreign traffic.

This petition having been presented and argued, the court is now required to review its rulings upon the trial, and the instructions given to the jury. After reflection and deliberation, with due respect to contrary decisions of other courts, I am convinced that the employer's liability act is not unconstitutional, nor in principle a departure from the legislative policy of the government. The substance and sum of the argument against the constitutionality of this statute is that the whole power of Congress to enact laws affecting the business of common carriers of freight and passengers, is conferred by the interstate and foreign commerce clause of the Constitution, and that the contracts of carriers with their employés and the duties and obligations of each to the other, are matters of purely local concern, and not comprehended within the constitutional grant of power "to regulate com-

merce with foreign nations, and among the several states, and with the Indian tribes." This view of the subject appears to me to be much too narrow to accord with the practical and judicial interpretation which has been given to this clause of the Constitution. Commerce has been defined to be traffic; that is, the buying, selling, and exchanging of commodities. This comprehends more than the mere contracts by which merchandise is bought, sold, and exchanged. The actual transfer of merchandise and delivery of the manual possession thereof, and its transportation from one place to another are included. Regulations of commerce are rules to be obeyed in carrying on the business of buying, selling, exchanging, transferring, and moving the property which is the subject of traffic, and to be effective such regulations must not only control the conduct of merchants, bankers, and others engaged as principals in the business, but their servants and agents, and the carriers who serve them in the transportation of property from one place to another, and those who furnish the facilities for communication between distant points which aid the business. Ships, vehicles, railways, telegraph lines, and cables are all necessary to traffic, and subjects of regulations of commerce, which may be prescribed by lawful authority. But merchants and merchandise, bankers and money, clerks, accountants, and agents, ships, vehicles, tracks, locomotives, cars, storehouses, wharves, telegraph lines, and cables, and the postal service all combined would be ineffectual to carry on foreign and interstate commerce without the skill and strength of captains, engineers, firemen, seamen, stevedores, trainmen, mechanics, and the host of laborers' constituting the force necessary to operate and keep in repair the physical appliances of commerce. The employés who work for wages in every branch of the business, giving life and mobility to trade are equally subject to regulations of commerce as those whom they serve, and regulations prescribing their rights and obligations with respect to their employment not only affect commerce but regulate commerce.

By the statute under consideration the law of the country has been changed radically; but it is harmonious with, and not more radical than other laws enacted by Congress in the exercise of the power conferred by the interstate and foreign commerce clause of the Constitution which have been uniformly acquiesced in by the people and enforced by the national courts, since the first shipping law was enacted by the first Congress in the year 1790. Act July 20, 1790, c. 29, 1 Stat. 131. The scope of that law is indicated by its title, viz.: "An act for the government and regulation of seamen in the merchant service." Sixty-five pages of volume 3, United States Compiled Statutes, 1901 (pages 3061–3125) are required to set forth the statutes which have been enacted by Congress relating to seamen in the merchant service, prescribing regulations comprising almost every detail of "Sailor's Rights."

These statutes require contracts for the employment of seamen to be in writing, and signed before the departure of the ships on which they are to serve from the shipping port; they prescribe the minimum daily allowance of food, so that sailors shall not be subjected to hunger, and require warm rooms to be furnished on ships during cold weather, and

that medicine chests and slop chests shall be provided for the use and benefit of their crews; they prohibit the flogging and maltreatment of seamen; they subject shipowners and masters to liability for damages for wrongfully withholding wages, and prescribe rules for compelling sailors to perform the obligations of their contracts of employment, and authorize the forfeiture of wages for desertion. These and similar laws are firmly established in the jurisprudence of the country, and they regulate the business of carriers by water, which is an important part of foreign and interstate commerce. It is now too late to make the discovery that the constitutional power of Congress is not ample to authorize legislation on these subjects. The similarity of the statute under consideration to the laws affecting the rights of shipowners and mariners is obvious, and the Constitution contains no suggestion of a more extended grant of power to regulate the business of carriers by water than the power to regulate the business of carriers over land. In the argument in support of the defendant's petition, an attempt was made to differentiate maritime commerce from its other branches, by assuming that the admiralty jurisdiction of the federal courts, by a necessary implication, embraces legislative power, and the case of Butler v. Boston Steamship Company, 130 U. S. 527–558, 9 Sup. Ct. 612, 32 L. Ed. 1017, was cited, in which Mr. Justice Bradley said, in effect, that as exclusive jurisdiction of admiralty and maritime cases is vested in the national courts, the exclusive power to legislate on the same subject must be necessarily in the national legislature. Similar dictum may be found in the opinion by Mr. Justice Brown in the case of The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770. This, however, falls far short of being a determination by the Supreme Court that the power of Congress to enact shipping and navigation laws, steamboat inspection laws, and the laws relating to seamen is a mere incident or appendage of the judicial power of the government, and not within the scope of the powers granted directly to Congress in express terms. Whilst the three coordinate branches of our government are intimately connected, and in the performance of their functions interdependent, each is a check on the others, and to insure the independence of each, the Constitution, by separate articles, confers the executive power upon the President, the legislative power upon Congress, and the judicial power upon the courts. The regulation of commerce requires the exercise of legislative power, and as the power to regulate is expressly granted in broad terms, there can be no occasion for supplementing it or extending it by implications, to comprehend any particular branch of commerce. It is to be noted that the Employer's Liability Act is not limited to apply, only, to carriers over land, but applies as well to carriers engaged in maritime commerce.

As a regulation of the business of land carriers, this statute is not the first of its kind. The safety appliance law enacted by Congress in 1893 imposes a positive duty on carriers engaged in interstate commerce, to protect the lives and limbs of railroad employés and travelers, by equipping trains with air brakes, and automatic couplers, rendering it unnecessary for a man operating the coupler to go between the ends of the cars, and with secure grab irons or handholds in the ends and sides of

each car, for greater security to the men in coupling and uncoupling cars. · It also provides for fixing a standard of the height of drawbars for freight cars, and it abolishes the "assumption of risk" rule, in all cases in which an employé may be injured by any locomotive, car, or train in use contrary to the provisions of the act. In the case of Johnson v. Southern Pacific Co., 196 U. S. 1–22, 25 Sup. Ct. 158, 49 L. Ed. 363, the Supreme Court of the United States reversed a decision of the Circuit Court of Appeals for the Eighth Circuit, denying to an injured employé the right to recover damages in an action based upon said act, and held that a reasonably liberal rule of interpretation should be applied to the act to give effect to the intention of Congress. In that case the constitutionality of the act does not appear to have been questioned, nevertheless the decision of the Supreme Court is necessarily an affirmance of its validity, for it is not presumable that in a contested case, admitted to be of such public importance as to justify the granting of a writ of certiorari to bring it before the Supreme Court for review, learned counsel and the court would have ignored a question of such paramount importance.

· As I am constrained to grant the petition for a new trial of this case, for error in the instructions given to the jury to the effect that a verdict in favor of the plaintiff might be rendered, notwithstanding his contributory negligence, an expression of my opinion on the question as to the constitutionality of this statute might be evaded now. But the question has been argued fully by able counsel in this case, and it must be decided in disposing of other cases now pending in this district, therefore I have deemed the first opportunity to be the proper occasion for announcing my positive belief on the subject.

Section 2 of the act provides as follows:

"Sec. 2. That in all actions hereafter brought against any common carriers to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence was slight and that of the employer was gross in comparison, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. All questions of negligence and contributory negligence shall be for the jury." 34 Stat. 232, c. 3073.

The phrase "all actions hereafter brought" is broad enough to include actions for injuries suffered prior to the enactment; but although within the letter of the law, such cases must be deemed to be not within its purview, if the retroactive effect would defeat the law by making it unconstitutional. I hold that a retroactive statute enacted by Congress is not unconstitutional, unless its effect would be a deprivation of life, liberty, or property, contrary to the fifth amendment, and that the taking away of defenses to civil actions based upon rules of law which are purely arbitrary, e. g., the statute of limitations, would not be such a deprivation. Campbell v. Holt, 115 U. S. 620–634, 6 Sup. Ct. 209, 29 L. Ed. 483. The plea of contributory negligence as a defense to an action to recover damages for an alleged tortious injury, is an affirmative traverse of the plaintiff's cause of action, similar to a plea of want of consideration as a defense to an action upon an alleged contract, for

if it can be established by evidence it disproves the plaintiff's case. Such a defense does not rest upon a mere arbitrary rule exempting a party from legal process to enforce an obligation, but its foundation is in reason and natural justice.

In the case of Little v. Hackett, 116 U. S. 371, 6 Sup. Ct. 393, 29 L. Ed. 652, Mr. Justice Field, in delivering the opinion of the court, said:

"That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. * * * If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy, against one also in the wrong."

This rule has been heretofore generally recognized as a part of the common law, in England and the United States, and the same rule is to be found in the Roman law. Wharton on the Law of Negligence (2d Ed.) § 300; 7 Amer. & Eng. Encyc. Law (2d Ed.) 371, 372.

Therefore this statute creates a new right and a new obligation. I do not question the justice of the rule of comparative negligence, as it may be applied in actions for injuries suffered after its legalization, but it cannot be applied to past occurrences without working a deprivation of property in a manner which the Constitution forbids; for if so applied, the statute, and not the injury, would fix the plaintiff's rights and the defendant's obligation, which are the important elements of the cause of action.

For this reason alone, the petition for a new trial will be granted.