THE ROCKAWAY.

(District Court, D. New Jersey. June 17, 1907.)

1. MARITIME LIENS—STATE STATUTE CREATING LIENS—CONSTITUTIONALITY.
    Where a vessel is used on waters navigable only between different places in the same state, a proceeding in rem to enforce a lien thereon created by a statute of the state may be prosecuted in a state court as authorized by such statute, although, where it is used on waters navigable between any point in that state and any other state or country, a lien for repairs or necessaries, though created by the state statute and not by the general maritime law, is enforceable by a proceeding in rem only in the admiralty courts. Therefore a state statute providing for liens on vessels for work, materials, or necessaries furnished for the same is not unconstitutional because it prescribes a procedure in rem in a state court for the enforcement of such lien, which provision must be construed as applicable only in case of vessels used wholly in domestic waters.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 22.
    Created by state laws, see note to The Electron, 21 C. C. A. 21.]

2. SAME—REPAIRS ON DOMESTIC VESSEL—STATUTORY LIEN.
    Under the New Jersey statute (Act March 20, 1857 [P. L. p. 382]) as amended by Act April 24, 1884 (P. L. p. 248), which gives a lien on a ves-

sel for repairs made thereon under contract with the owner, a libelant is entitled to a lien enforceable in a court of admiralty for repairs made in that state on a domestic vessel under charter, where it appears that they were ordered by an authorized agent of the owner, and not by the charterer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 46.]

In Admiralty.

James Parker, for libelant.

Cushman, Dewell & Cushman, for claimant.

LANNING, District Judge. The libel filed in this case is for the recovery of the value of certain repairs to the steam lighter Rockaway, made at Perth Amboy, N. J., in June and July, 1905. In the argument counsel on both sides have assumed that the repairs were made in the Rockaway's home port, but there is nothing in the libel, answer, or proofs expressly showing this to be the fact. In the libel there is, it is true, an averment that the materials were furnished and the labor performed at Perth Amboy, N. J., and that by the act of the Legislature of New Jersey entitled, "An act for the collection of demands against ships, steamboats and other vessels," approved March 20, 1857 (P. L. p. 382), and the supplement thereto, approved April 24, 1884 (P. L. p. 248), the libelant has a lien upon the vessel for the repairs made. To this averment the answer merely interposes a denial of any lien "under the statutes of the state of New Jersey, or in any other way." If the Rockaway is a New Jersey vessel, a lien may exist under the New Jersey statute. The Lottawanna, 21 Wall. 558, 580, 22 L. Ed. 654; Hankins v. Cox & Sons Co., 63 N. J. Law, 512, 44 Atl. 206; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345; The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296; The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770. I shall assume, as I doubt not the fact is, that the Rockaway is a New Jersey vessel, and that she was repaired in a home port. The case rests therefore on the provisions of the New Jersey statute.

That statute provides that:

"Whenever a debt shall be contracted by the master, owner, agent or consignee of any ship or vessel within this state for either of the following purposes: On account of any work done, or materials or articles furnished in this state for or towards the building, repairing, fitting, furnishing or equipping such ship or vessel * * * such debt shall be a lien upon such ship or vessel. her tackle, apparel and furniture, and continue to be a lien on the same until paid, and shall be preferred to all other liens thereon except mariners' wages."

It also authorizes any commissioner appointed by the justices of the Supreme Court of the state to take special bail and to administer oaths or affirmations, or any one of the justices of the Supreme Court of the state, or any one of the judges of the courts of common pleas, to issue a warrant to the sheriff, coroner, or any constable for the seizure of the vessel, her tackle, apparel, and furniture, to answer the liens that may be established against her by the procedure prescribed by the statute. Under the authorities above cited, the procedure in rem thus prescribed cannot be prosecuted for the enforcement of any lien

against a vessel employed on the navigable waters of the United States; but the procedure doubtless is applicable to a vessel used only for local traffic on one of the small lakes of New Jersey which has no communication with any of the navigable waters of the United States. See The Montello, 11 Wall. 411, 20 L. Ed. 191, and Birch v. King and Walton, 71 N. J. Law, 392, 59 Atl. 11. In The Robert W. Parsons, 191 U. S. 17, 28, 24 Sup. Ct. 8, 48 L. Ed. 73, it was held that a proceeding in rem to enforce a lien given by a statute of New York against a canal boat used in the Erie Canal and the Hudson river was wholly within the jurisdiction of the admiralty courts, and that the lien could not be enforced by any proceeding in rem in any state court. But it was also said:

"It is not intended here to intimate that if the waters, though navigable, are wholly territorial and used only for local traffic, such, for instance, as the interior lakes of the state of New York, they are to be considered as navigable waters of the United States."

Where a vessel is used on waters navigable only between different places within the state of New Jersey, a proceeding in rem to enforce a lien thereon created by the New Jersey statute may be prosecuted under that statute; but, where it is used on waters navigable between any point in New Jersey and any other state or country, the lien for repairs or necessaries, though created by the New Jersey statute, and not by the general maritime law, is enforceable by a proceeding in rem in the admiralty courts only. The part of the New Jersey statute creating the lien is separable from the part prescribing the procedure for the enforcement of the lien. Where that procedure is inapplicable as in the present case, the lien may be enforced in a court of admiralty. The objection of the claimant that the New Jersey statute is unconstitutional must therefore be overruled. With the restricted construction above suggested, it is valid legislation.

The remaining question is: Do the facts justify the conclusion that a lien exists under the provisions of the New Jersey statute? It appears that the repairs were made between June 21 and July 28, 1905. On June 14, 1905, the claimant, being the owner of the Rockaway, executed to George B. Bidwell, who seems to have acted as agent of the New York & New Brunswick Transportation Company, a charter party, by which the owner hired to Bidwell the Rockaway, with the services of her engineer, for the period of 60 days from the date of the charter party, at the rate of $10 per day. Bidwell agreed to "provide and pay for all provisions for and wages of the master, officers and crew, except the wages of the engineer," and also to "pay for all stores, coals, fuel, port charges, pilotages, stevedores, agencies, and all other debts whatsoever excepting fire insurance." The owner agreed to pay the engineer's salary. The seventh clause of the charter party is:

"That in the event of loss of time from break down of machinery or boilers, and continuing at one time for more than twenty-four hours, the payment of hire shall cease at the time of such accident or disaster, and shall not be resumed until said propeller be repaired by the party of the first part (the owner), and put in an efficient state for the services for which she is required, and re-delivered at the place of repairs, unless it be mutually agreed to make the delivery elsewhere."

The vessel's machinery broke down on the night of June 20th, and on June 21st she was taken to the libelant's dock in Perth Amboy for repairs. The libelant says that Mr. McLaury, who was the agent of the owner, told him, before any of the work had been done, to make the necessary repairs, saying that the boat must be gotten out as soon as possible, and that nothing more than what was actually necessary to put it into running condition should be done. The repairs made to the vessel on June 21st amounted to less than $200. The vessel was thereafter put into service, and again brought to the libelant's dock for further repairs about July 5th. John Kress, the libelant's foreman, says that after the vessel was brought the second time to the libelant's dock McLaury personally gave orders to make the additional repairs. McLaury, when called as a witness for the owner, testified that his conversation with the libelant in regard to the repairs referred exclusively to a pump for which the charge is $42.50, which he admits he directed the libelant to furnish, and he denies that he authorized anything else to be furnished. Mr. Wiedenmayer, who is the president of the company owning the vessel, says that he spoke over the telephone to some one representing the libelant, and told him that the boat was under charter, and that the libelant should, under no consideration, do any repairs to her, except on the credit of the charterer. The libelant admits that he was informed, before doing any work on the vessel, that she had been chartered, but it does not appear that he was informed as to the nature of the charter party nor as to who were the parties thereto. Mr. Henderson was produced as a witness on the part of the libelant, and says that he was acting as an agent of the New York & New Brunswick Transportation Company. Henderson says the Rockaway was put on the New York & New Brunswick Transportation Company's line, according to the best of his recollection, on the morning of June 15th—that is, the next morning after the date of the charter party—that she broke down on the night of the 20th, and that on one occasion, which I think was after the second breakdown, McLaury, the agent of the owner, came aboard the vessel and gave an order to John Kress, the libelant's agent, "to fix her up and put her in shape to run on as little expense as possible." Kress also declares in his testimony that McLaury directed him to have the repairs made.

As above stated, the seventh article of the charter party expressly provided that, if there should be a loss of more than 24 hours resulting from a breakdown of the machinery of the vessel, the charge of $10 a day should be suspended, and not resumed until the owner should put the vessel into a proper state of repair. There is some conflict in the proofs, but when McLaury was recalled on behalf of the owner, just before the testimony in the case was closed, he declared that, "if the truth came out, he [referring to the engineer in charge of the machinery] would be the man who ordered these repairs." It will be remembered that the engineer, according to the charter party, was an employé of the owner. His wages were paid by the owner, and he was not in any sense a representative of the libelant or of the charterer. The effort of McLaury to shift responsibility for ordering the repairs

from himself, an authorized agent of the owner, to the engineer, an employé of the owner without authority to order repairs, is one that to my mind weakens the force of his testimony that he did not order the repairs. As agent of the owner, he doubtless desired the repairs · to be made as soon as possible so as to avoid any loss of rental. I am satisfied the repairs were not ordered by the charterer. If they were ordered by the engineer, and McLaury, knowing that fact, remained silent, he must be held to have impliedly authorized them. I think there is no doubt but that McLaury either expressly or impliedly authorized the. repairs.

Having reached this conclusion, it must be remembered that we are dealing with a lien created, not by the general maritime law, but by the New Jersey statute. . That statute declares that whenever a debt shall be contracted by the owner of a vessel within the state of New Jersey for repairs the debt shall be a lien on the vessel, her tackle, apparel, and furniture. In The Iris, 100 Fed. 104, 112, 40 C. C. A. 301, 309, Judge Putnam said:

"There remains the third principal point which we have stated—that, in the absence of proof that credit was given the vessel, no admiralty lien can arise, although the circumstances fulfill all the conditions which the local statute requires. This is supported by two supposed authorities. In The Samuel Marshall, 54 Fed. 396, 402, 4 C. C. A. 385, there is a dictum, in effect, that a local lien can be enforced in admiralty only where credit is given the vessel, and that in this respect there is the same limitation as with reference to supplies furnished a ship in a foreign port. The Lottawanna, 21 Wall. 559, 22 L. Ed. 654, is supposed to lay down a similar rule at page 581; but this question did not arise in that case, and at page 580 the opinion says: 'The rights of materialmen furnishing necessaries to a vessel in her home port may be regulated in each state by state legislation.' Also, in The Glide, 167 U. S. 620, 17 Sup. Ct. 930, 42 L. Ed. 296, the opinion quotes from the Lottawanna the unqualified language which we have already cited. In truth, this third point is but a repetition, in a new form, of the last question which we have answered, and seems to be disposed of by what we have said about The Glide and The J. E. Rumbell; and we have shown, by a full citation of authorities in the early part of this opinion, that the Supreme Court has reiterated the unrestricted power of state Legislatures to create liens on domestic vessels under such limitations as each may determine."

The above language is quoted, with approval, by the Circuit Court of Appeals of this circuit in the recent case of The Vigilant, 151 Fed. 747, 752, 81 C. C. A. 371. These authorities make it clear that the debt incurred for the repairs to the Rockaway is a lien on the vessel, and that it is the duty of this court to enforce it.

There will be a decree in favor of the libelant; but, as there is no proper proof of the cost of the repairs, the decree must be an interlocutory one with a reference to a commissioner to take proofs on that point.