## THE EASTERN PRINCE.

PARKER v. NORTHWEST TRANSPORT CORPORATION, and three other cases.

Nos. 13948-13950, 13972.

District Court, W. D. Washington, N. D.
March 23, 1938.

Richard McGough and James M. Hay, both of Seattle, Wash., for libelants.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for respondent and claimant.

NETERER, District Judge.

Libelants Parker and Thormodsater, Kelly and Murray, interveners, are by separate libel seeking to impress liens upon the respondent motorship Eastern Prince, for services claimed to have been performed at the instance of the respondent claimant; the libels have been consolidated with No. 13948, and, the evidence submitted and arguments made, the court finds from the testimony the following facts and conclusions:

That on or about the 7th day of August, 1937, in fact, prior to this date, Chas. Moe, John Moe, M. A. Neilson, R. A. Kendall, O. G. Murray, and L. Thormodsater, conceived the idea of organizing a co-operative entity for operating a steamship on a route from the port of Seattle to ports of Alaska, and, to carry forward this scheme or plan, they secured under date of August 7, 1937, from A. L. Grimes, of Ozinki, Alaska, a charter for the motorship Eastern Prince; said motorship was to be put in condition and all repairs required were to be made by the owner at his expense and provided that no lien should be permitted to be created against the ship; and also vessel to be returned in good order and free from liens. The vessel to be delivered on the 21st of August, following. Charter hire to commence on the 23d day of August. The basis for a corporation to carry on the venture, scheme, or plan was a dormant corporation of the state of Washington; this dormant corporation, in the interest of economy, was to be revived, and stock was to be issued to all of the co-operative members, and a certain percent of the allotment of each seaman for wages was to be credited upon stock in the corporation subscribed for by each until paid. The compensation to the seamen was covered by the profits of the concern, having in mind the scale of wages of the masters, mates, and pilots union. The wages were to begin when the vessel was delivered, and if the venture was profitable to be permanent. From August 7th, to the date of the delivery of the vessel on the 21st day of August, services performed by the several members were in expectation of creating future employment or "jobs," as stated by one of the witnesses; this preparatory work was not to be compensated for, but was performed solely to create a condition for permanent work.

Parker was not one of the original members in organizing the co-operative entity, but was the person agreed upon as master by all and knew of the plan, and entered into the scheme and plan, and did agree to the terms of employment with relation to the stock, although no stock had been issued to him, such was the status of the other libelants, except Kelly, who was not a member thereof.

The members of the crew including libelants were to receive no money until the

vessel was taken over by the respondent; the respondent was expected to and did accept the vessel on August 20, 1937, and on that day at 4 p. m. Parker, as master, took charge of the ship. The voyage commenced on the 23d day of August, 1937; Parker was hired on the 21st. The date of the beginning of employment of the libelants is noted in the articles as August 21st and 23d. The vessel on this voyage was on two occasions stranded and had other mishaps, so that the voyage was not completed until November 6, 1937, at which time the vessel was dry-docked and all of the crew, including libelants, was paid off in full to that date, at the wages fixed by masters, mates and pilots union rules. No further services were rendered on the ship by any of the libelants. Parker was told to stand by in anticipation of another voyage. On November 22d, Parker was formally discharged.

A maritime lien can be created only by act of Congress, state statute, or by visible contract with, or occurrence relating to, the services on the ship, and must be a manifest and open, ocular, physical endeavor of maritime service, or activity which may serve as notice to the world of an existing claim. The principle of hypothecation cannot be applied upon a secret agreement or understanding between the charters or seamen or by reason of implied relation which may obtain. A state statute may not create enforceable maritime lien upon a ship of foreign ownership. The Roanoke, 189 U.S. 185, 23 S.Ct. 491, 47 L.Ed. 770 (construing a Washington statute). Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917 E, 900 (holding invalid the Workmens Compensation Act of New York as being in conflict with U. S. Constitution, since it works prejudice to the general Admiralty and Maritime jurisdiction). All services claimed for after August 7, 1937, to August 21, 1937, and all services after November 6, 1937, the end of the voyage, may not be impressed upon the ship; and it may also be said that Parker, master, under the general Maritime Law, has no impressable maritime lien upon this ship. The Orleans v. Phoebus, 36 U.S. 175, 11 Pet. 175, 9 L.Ed. 677; The Putnick, D. C., 291 F. 902, decided by me, impressed a lien provided by the statute of Washington.

It is obvious that the agreement of employment was a hire "at will" contract and was terminated by the payment of stipulated wages at the end of the voyage. Livermore v. Mandeville & Thompson, Inc., 5

Cir., 93 F.2d 563; The Pokanoket, 4 Cir., 156 F. 241.

The court finds that Parker was requested by the president of the respondent to stand by, and he did stand by, until the day following the end of the voyage, when he was injured while not in the service of the ship and was in the hospital about ten days as a witness testified, but Parker said about three days. I think Parker should be paid by the respondent company for the time that he stood by. The voyage having ended and he was paid in full, he stood by for the next contemplated voyage and was discharged before the voyage began, hence no lien attached to the vessel. From the evidence no lien is established for either of the libelants, and this being a proceeding in rem the libels of each and all must be and are dismissed.

Each party will pay his own costs. Hope is indulged that respondent will promptly pay Parker for the time he stood by.

### Supplemental Opinion.

NETERER, District Judge.

Libels were filed December 2, 1937, by three seamen, Howell Parker, L. Thormodsater, and J. J. Kelly, by the same proctors involving identical issues, for wages covering the same period of time; libelants filed a motion for consolidation of the three libels before appearance of respondent, at the suggestion of respondent; the motion was presented by proctors for the libelants, and the order of consolidation was entered. This order provided that "all further proceedings" be had in the case of Howell Parker, libelant. Respondent made one appearance in the consolidated case and paid a $5 fee; separate answers were filed January 15, 1938, to each libel; February 21, 1938, O. G. Murray filed a separate libel involving an identical issue as to him; answer was filed March 9, 1938. This case was consolidaed for trial with the Parker case. The same proctors appeared for all libelants; the respondent prevailed. A stipulated release, and costbonds were filed in the consolidated case. There is dispute between the clerk and the respondent as to the fees to be paid in the dismissal of the libels; the clerk demanding an additional fee of $2 for each of the libels (it is agreed the fee in the Murray case should be paid) because of the filing of separate answers, and by stipulation the issue is presented to the court for determination.

The issue is controlled by section 550, tit. 28, U.S.C.A., which reads: "Upon the filing

of any answer or paper joining issue, or the entering of an order for trial, there shall be charged and collected by the clerk, from the party or parties filing any such answer or paper, for services performed and to be performed by said clerk in said case or proceeding, the further sum of $5. After one fee as hereinbefore provided in this section, has been paid by any defendant, cross petitioner, intervenor, or party, other defendants, cross petitioners, intervenors, or parties, separately appearing or filing any answer or paper in said suit or proceeding, shall pay a further fee of $2, for each answer or paper so filed."

Section 549, tit. 28, U.S.C.A., provides that upon the instituting of any suit there shall be paid by such party as fees of the clerk for all services to be performed by him in such case, except as elsewhere provided, the sum of $5.

The libelants, being seamen, are not required by law to prepay filing fees, or to file stipulations for costs, section 837, tit. 28, U.S.C.A.; this provision is in lieu of the cash requirements of section 549, supra, and the libels having been consolidated, and to "proceed in determining" all of the issues in the Parker case, the libels stood in the relation of one action, each libel forming a separate count or cause of action, since the seamen could have united in the one libel, and should have done so; the court if recovery had been made in the case would not have permitted the taxation of proctors' fees in more than one case. The respondent, having paid appearance fee, under general appearance, after consolidation does not in any sense bear the relation of cross-petitioner, intervener, or other defendant; it, having paid its appearance fee, has fully complied with the requirements of the statute, and no further charges against it may be made by the clerk.

Costs in admiralty being under the control of the court, The Sapphire, 85 U.S. 51, 18 Wall. 51, 21 L.Ed. 814; see, also, Harmony v. U. S., 43 U.S. 210, 2 How. 210, 11 L.Ed. 239; The Scotland, 118 U.S. 507, 6 S. Ct. 1174, 30 L.Ed. 153; The Maggie J. Smith, 123 U.S. 349, 8 S.Ct. 159, 31 L.Ed. 175, the court decreed that each party to this proceeding pay their or its own costs. Section 549, tit. 28, U.S.C.A., supra, required payment of $5 upon the instituting of any suit or proceeding and by section 837, tit. 28, U.S.C.A., supra, prepayment or advanced payment was not required, but the obligation to pay by the seamen was not removed;

and if libelants had recovered judgment the filing fee would have been deducted from such judgment and applied to the payment of the filing fee. The claims of the respective libelants not being well founded, and no recovery being had, and separate libels being filed, the clerk will tax as costs the $5 filing fee, required by section 549, tit. 28, U.S.C.A., supra, against each libelant.