RICHMOND (HULL v.). See Case No. 6,861.

RICHMOND, The (JONES v.). See Cases Nos. 7,491 and 7,492.

RICHMOND (LE FRANC v.). See Case No. 8,209.

---

## Case No. 11,800.

### RICHMOND et al. v. NEW BEDFORD COPPER CO.

[2 Lowell, 315.] [1]

District Court, D. Massachusetts. 1874.

PARTIES IN ADMIRALTY—REFUSAL TO JOIN—JOINT OWNERS.

1. Courts of admiralty, within the limits of their jurisdiction, resemble courts of equity in their practice and modes of proceeding, but are even more free from technical rules.

[Cited in Paterson v. Dakin, 31 Fed. 685; Watts v. Camors, 115 U. S. 361, 6 Sup. Ct. 94.]

2. If a court of equity would not dismiss a case because some of the joint plaintiffs refused to proceed, a court of admiralty would not dismiss a libel under similar circumstances.

3. It seems that at law one of two joint contractors has the right to sue in the name of both, subject to the right of the other to be indemnified for costs, and to give a release of the joint cause of action.

4. A similar rule applied in the admiralty, where ten out of thirteen owners, having a ma-

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

jority of the shares in a ship, brought a suit in the name of all the owners.

5. Motion by the three unwilling plaintiffs to have their names struck out of the libel denied, with leave to apply to have the suit stayed until they were indemnified for costs.

6. It seems that part owners of a ship cannot release a debt due to all the owners, if the debtor knows that the debt is due to all the owners as such.

Libel for damages brought by thirteen persons [Joshua Richmond and twelve others], owners of the bark Lancer, of New Bedford, alleging that the defendants had contracted to furnish that ship with a suit of bronze metal for her repair, and had undertaken that it should be fit, suitable, &c., and had furnished an article which was put upon the ship, but which proved not to be bronze metal, and to be unfit, &c. Three of the plaintiffs filed a statement that the libel was brought without their consent, and that they did not and do not participate therein, and asking that their names may be stricken therefrom. The defendants thereupon filed an exception to the suit for want of parties.

G. Marston and C. W. Clifford, for plaintiffs.
T. M. Stetson, in support of the exceptions.

LOWELL, District Judge. It is a rule founded in justice that a single cause of action, though it accrue jointly to several persons, ought to be the subject of but one suit, and, in whatever mode the object may be attained, the courts must manage that the controversy shall be settled once for all. If part owners of ships have made a contract with a third person, which is joint in its nature, no doubt this rule applies to them, and their action on the contract must be joint. Story, Partn. § 454. The defendants argue that, at common law, any joint contractor may prevent action on the joint contract by refusing to give his consent, and that in this respect a court of admiralty will follow the practice at law. They admit that in equity a way might be found out of the difficulty.

No authority has been produced for the assertion that the practice in admiralty is like that at common law in this particular, excepting some very general remarks made by Conkling and Betts, JJ., that the rules of admiralty resemble substantially those of other courts. This is true; but when courts of law and equity differ, the practice of the admiralty resembles much more nearly that of the latter. This is explained in part by the fact that both have borrowed more freely and for a longer time from the civil law; but, however explained, it is certain that their systems of pleading differ essentially from those of the common law. This is even more true of the admiralty courts than of those of the chancery. The former have not full chancery powers, and they deal with a limited class of subjects; but all their processes and modes, both of practice and decision, are equitable. Many remarks of eminent jurists

sustain this statement. Thus, Mr. Justice Story: "No proceedings can be more unlike than those in the common law and in admiralty." The Adeline, 9 Cranch [13 U. S.] 284. "They are not governed by the strict rules of the common law, but act upon enlarged principles of equity." The Virgin, 8 Pet. [33 U. S.] 550, and he made many other similar observations in other cases. So Lord Stowell: "This court certainly does not claim the character of a court of general equity; but it is bound by its commission and constitution to determine the cases committed to its cognizance on equitable principles and according to the rules of natural justice." The Juliana, 2 Dod. 521. "Within the limits of that very extended equity, which this court is in the habit of exercising." The Fortitudo, Id. 70. Mr. Benedict says that the American admiralty is freer from technical trammels than either the common or civil law. Ben. Adm. § 358. It would be easy to multiply quotations of a similar purport, but a brief review of certain well-known classes of decisions will be of more value than any general remarks, even of the most eminent jurists. Courts of admiralty have never had a statute of jeofails, and have never needed one. So far have they carried the power to allow amendments, that it has been laid down by the highest authority that an action can never fail for want of proper allegations, if merits clearly appear in the record. And several cases have been sent back from the supreme court, with orders to permit amendments and then to proceed to a decree. I am not speaking of amendments to introduce new facts, but those of either form or substance to conform to evidence. See The Adeline, 9 Cranch [13 U. S.] 244; The Caroline, 7 Cranch [11 U. S.] 496; The Anne, Id. 570; The Edward, 1 Wheat. [14 U. S.] 261; Newell v. Norton, 3 Wall. [70 U. S.] 257. These great powers are derived from the very constitution of the court, and the immemorial course of its proceedings. So it has more than all the powers of a court of equity, in permitting a joinder of actions, as where all the seamen, or all the salvors, of a vessel, though their rights may be totally distinct and several, are permitted, and even required, to join in one action. When the law did not permit parties to be witnesses, courts of equity would authorize plaintiffs to withdraw from a suit in order to testify, in some cases. Courts of admiralty permitted the testimony without requiring the withdrawal. So in these courts, either party can interrogate the other, and not merely the plaintiff the defendant as in equity. It has always treated seamen as equity treats wards. &c., and has set aside in their favor contracts, whether sealed or not, which were found to be oppressive. Within its sphere it has full and equitable powers to marshal legal and equitable liens on a ship or on any fund lawfully in its custody. These examples show the freedom from technical rules, and the analogy to the proceedings in equity, which were adverted to by the authors I have cited. I understand it to be admitted that the plaintiffs, who ask to have their names stricken from the pleadings, own but an insignificant fraction of the ship concerning which the contract was made; and, if so, they ought by all analogy to be subject to the vote of the majority in bringing a joint action. There is no ground of reason, or of general law, apart from a supposed technical rule of pleading, which would authorize the minority to put a veto on this or any other honest proceeding on the part of the other owners, and when this is admitted and that a court of equity would not stop its course for such a motion, the case seems to be ended. I am not, however, prepared to admit that a court of common law, at the present day, would permit the three protesting plaintiffs to go out of court. The cause of action must be settled in one suit, and there is nothing the plaintiffs can lose but costs; and if some of the owners desire one court and some another, and some none, justice seems to demand that the greater part in value should prevail, and that the recusants should be indemnified for costs. The common law of England appears to be settled according to the view just mentioned, and before I had examined the late cases in that country, I ventured to suppose such to be the law of Massachusetts. I have not found any case in this state directly in point one way or the other, and I remain of the same opinion. The latest English writer on the subject, says, "One of the coplaintiffs has a right to bring an action in the name of both, nor has the court any right to interfere unless the coplaintiff's name has been used, not only against his will, but fraudulently." Dicey, Parties, p. 108. The following cases, most of which are cited by Mr. Dicey, sustain his summary of the law: Whitehead v. Hughes, 2 Dowl. 258; Emery v. Mucklow, 10 Bing. 23; Laws v. Bott, 16 Mees. & W. 300; Ex parte Turquand, 2 Mont., D. & D. 345; 1 Lindl. Partn. 226. The principle of these decisions is as well fitted to a case of ten against three as of one against one, especially as the ten have a preponderance and not a mere equality of interest. The learned author goes on to say that the partner or other coplaintiff is not without remedy, because he may either, first, require indemnity, and have the suit stayed until it is furnished, or, second, release the action. The latter course is a bar at law, unless the release is fraudulent, and only leaves the releaser liable to his copartners for damages. It can hardly be even at law that one owner in a ship, known to the defendant to be so, can release a cause of action accruing to all the owners. That would closely resemble the undertaking by a tenant in common of land to give a valid acquittance to the terre tenant, after notice to the latter to pay the other share to the true owner, which was not permitted at law. Harrison v. Barnby, 5 Term R. 246.

If one co-owner has received his own part, say of the freight or other money due to the owners, it is left doubtful by Mr. Justice Story whether the remaining owners can sue at law, or must resort to equity. Story, Partn. § 454, note 2. My impression is, that in Massachusetts it might be considered that a severance had been effected by the consent of the defendants, and if so the remedy would remain good at law. "If," says Parsons, C. J., "a factor should in fact account with and pay one partner his share, and thereby discharge all his interest in the partnership, this would be an implied engagement to account with each partner severally." Austin v. Walsh, 2 Mass. 405. In this case there is no plea or suggestion that the three recusant plaintiffs have undertaken to release either their own interest, or that of all the owners, and the libel stands simply as one they do not care to prosecute. I do not think the other owners can be put in a worse position by their objection, than if there had been an actual payment and release of part or all the supposed debt or damage.

Upon the whole, as I do not consider that the motion to strike out would be granted in its present form, either at law or in equity, and as courts of admiralty are more free from technical trammels than even courts of equity, and as it is not contended that the merits of the case are at all involved in this application, I do not consider it necessary or proper to send the parties to a court of equity. My order therefore is: The exceptions of the defendants are overruled. The motion of the plaintiffs, W. J. Rotch, Gideon Allen, and Gilbert Allen, is denied, with leave to them to revive it hereafter, if so advised, in a modified form, namely, that the suit be stayed until they are indemnified for costs.