## THE HAYTIAN REPUBLIC.

UNITED STATES v. THE HAYTIAN REPUBLIC (BURCKHARDT et al., Interveners).

(District Court, D. Oregon. December 17, 1894.

No. 3,403.

1. MARITIME LIENS—MONEY LOANED TO OWNERS—ADVERTISEMENTS FOR BUSINESS.

Money loaned to the owners to be used in running the vessel, and in fact applied to that purpose, is a credit to the owners, and not a lien on the ship; and the same is true of bills for the ship's advertisements for business.

2. SAME — FORFEITURE OF VESSEL FOR SMUGGLING — KNOWLEDGE OF SUPPLY MEN.

The fact that a ship has been arrested for smuggling, and released on bond, *held* sufficient to put persons subsequently furnishing her with sup-

plies upon inquiry as to her character, and to defeat their claims, as against the government's right to a forfeiture.

**3.** SAME—SUPPLIES IN HOME PORT—OREGON STATUTE.
The Oregon statute which gives a lien for supplies furnished in the home port applies only to vessels navigating the waters of the state, and not to a vessel used exclusively in navigating the seas between ports of the state and foreign ports.

**4.** SAME—FORFEITURE—LIENS FOR PREVIOUS SUPPLIES.
Forfeiture of a vessel for smuggling cuts off liens for supplies furnished prior to the cause of forfeiture. The St. Jago de Cuba, 9 Wheat. 410, distinguished.

**5.** SAME—CLAIMS FOR PASSAGE MONEY—ILLEGAL PAYMENTS.
The purchase by Chinese persons of tickets from Vancouver to an Oregon port for about six times the regular fare, *held* to create a presumption of knowledge on their part of the fact that the payments were in large part to secure the landing of Chinese persons in this country in violation of law.

These were interventions by Burckhardt Bros. and others to secure payment of various claims out of the proceeds of the Haytian Republic, which was heretofore adjudged to be forfeited to the United States for smuggling. See 57 Fed. 508; 8 C. C. A. 182, 59 Fed. 476; and 14 Sup. Ct. 992.

John M. Gearin, for libelant.

T. Harris Bartlett, for interveners Burckhardt Bros. et al.

Charles F. Lord, for intervener Charles Gin Tong.

BELLINGER, District Judge. Burckhardt Bros. intervene on behalf of themselves, and as assignees of a large number of claims against the Haytian Republic, and petition for payment thereof out of the proceeds of the sale of the vessel under forfeiture to the government, now in the registry of the court. Ten of these claims are for supplies furnished and work done during June, 1894, when the vessel was in custody of the marshal. They have no place in this intervention. If they are bona fide claims, they are already provided for in the order which has been made for expenses incurred in taking care of the vessel while in custody. The claim of Mark Levy for supplies during July, 1893, is in the same category. The vessel was arrested on July 7th, and there is no inference from all that appears that these supplies were furnished prior to that time. So, too, of the claims for marine insurance, which are stated as being for insurance "for one year last past." During the whole of such time, and longer, the vessel was under arrest. The claims made for expense of telegraphing "in and about the business" of the vessel are not entitled to consideration. If the expense of telegraphing can, upon any state of facts, become a maritime lien, there is nothing in this case to place these claims in that category. During the greater part of the time covered by this expense, the vessel was under arrest at this port, or at Seattle, where she was arrested on June 6th. So far as appears, this telegraphing was by or between the owners and agents of the vessel. Nor is the character of the business of the ship, about which this telegraphic correspondence was carried on, disclosed. It may have related to the criminal business on account of which the ship was forfeited, or to the various proceedings against the ship on account of such proceedings.

The claim on account of money loaned the owners to be used, and

in fact used, to defray the expense of running the vessel, was a credit to the owners, and not to the ship. The ship's advertisements for business stand upon the same footing.

The holders of all the various claims for supplies furnished and work done during and subsequent to June, 1893, are fairly chargeable with knowledge, or with notice having the effect of knowledge, that the ship was a smuggler. She had been arrested at Seattle in the state of Washington on the 6th of June for smuggling and released on bonds. On July 7th she was arrested at this port for causes of forfeiture occurring prior to the first arrest. At least, these facts were enough to put those dealing with the ship upon inquiry.

So far as these claims are for repairs and supplies furnished the vessel in her home port, they are not liens, unless they are within the state statute. The lien provided by such statute is restricted to boats or vessels used in navigating the waters of the state, or constructed within the state. I am of the opinion that vessels used exclusively in navigating the seas between ports in this state and foreign ports are not within this statute, that they are not vessels used in navigating the waters of the state, and that no lien exists for repairs or supplies furnished such vessel in her home port.

One of the claims for which intervention is made is for supplies of coal furnished in British Columbia in February, 1893. The subsequent forfeiture cuts off this lien. In the case of The St. Jago de Cuba, 9 Wheat. 410, the claims of seamen for wages, and of material men for supplies, where the parties were innocent of all knowledge of or participation in the illegal voyage, were preferred to the claim of forfeiture on the part of the government. The interveners rely on this case, but it is a case of services contemporaneous with or subsequent to the cause of forfeiture. The court says that "the whole object of giving admiralty process and priority of payment to privileged creditors is to furnish wings and legs to the forfeited hull; to get it back for the benefit of all concerned,—that is, to complete her voyage." These creditors were privileged because their contribution of service in enabling the vessel to complete her voyage had benefited the government, which was concerned in her return. Claims antecedent to the forfeiture are not within the reason which gives preference to subsequent services and material men. Such antecedent claims are subject to the general rule which makes the last lien supersede the preceding one.

Charles Gin Tong also intervenes for what he alleges is passage money paid by some six Chinamen, whose claims have been assigned to him, for the purchase of tickets for steerage passage from Vancouver, British Columbia, to this port. These tickets are alleged to have been purchased from William Dunbar, who is alleged to have been the agent of the owners of the vessel. Some of these tickets were purchased for $33.33, some for $35, and others for $40. It is admitted that the regular rate for such passage is $6. I am satisfied, from facts disclosed in certain criminal cases tried in this court, that the several purchases of tickets in question were criminal transactions; that the amount paid was, in larger part, for services in securing the landing of Chinese passengers into the country in violation of its laws. This is the most favorable light in which the

matter can be put. It is argued that at least the purchasers of these tickets were innocent, and were imposed upon. That they were not innocent is more than an inference. To my mind, it is a conclusive presumption. Without taking into consideration the knowl-·edge derived from other cases in this court, and that knowledge which is common to the community, the amount of these payments proves that they were less for passage than for other objects. There were other means of reaching this city from British Columbia, at an expense not much above the regular steerage rate by steamer; and it is inconceivable that Chinese persons entitled to land in this country were engaged in buying tickets merely for passage worth $6, and were paying $35 and $40 therefor. The prayer of the petitioners is denied.