FAIRGRIEVE et al. v. MARINE INS. CO., LIMITED, OF LONDON.

(Circuit Court of Appeals, Eighth Circuit. November 25, 1901.)

No. 1,544.

1. ADMIRALTY—AMENDMENT OF LIBEL—CONFORMITY TO MANDATE ON REVERSAL.

A decree of a court of admiralty awarding damages for injury to a vessel in favor of an underwriter which had paid insurance on account of such injury was reversed on appeal because it appeared from the libel that the damages caused by the injury exceeded the amount of insurance paid, and that libelant could not split the cause of action, and maintain a suit to recover a portion only of such damages. In its opinion the appellate court stated that on the return of the record to the district court it would be open to libelant "to amend its libel and show, if it can, that the excess of damages over the sum for which it sues has been paid, released, or otherwise extinguished, so that claimants are no longer liable therefor at the suit of any one." After the case was remanded the libel was amended by the addition of an allegation that the only party in interest except libelant was the company owning the injured vessel, which had authorized libelant to file the libel and collect the amount of insurance paid, and that the company made no further claim for damages. In support of such averment libelant offered in evidence a release executed by such company pursuant to a resolution of its board of directors, but after the cause was remanded, and which released any claim for damages beyond those sued for by libelant. *Held,* that such amendment, and the evidence in support thereof, conformed to the requirements of the mandate, by showing that at the time the libel was filed libelant was the only party in interest asserting any claim, and that the claimants were fully protected against a second suit, and entitled libelant to maintain the suit to recover its own damages.

2. SAME—STIPULATION FOR RELEASE OF VESSEL—LIABILITY OF SURETIES.

A stipulation given for the release of a libeled vessel takes the place of the released property, and the sureties become parties to the cause, and are bound by orders subsequently made therein to the same extent as the claimant. A decree rendered upon an amended libel, which the

court had power to permit to be filed, is as binding upon the sureties as upon their principal.

3. SHIPPING—SUIT FOR INJURY TO VESSEL—AWARD OF DAMAGES.

Where the insurer of a vessel pays a loss occasioned by her injury through the fault of another vessel only after the damage has been appraised by a commission, and the ordinary steps have been taken to verify such appraisement, there is a strong presumption that the damage was equal to the amount paid; and the estimate of witnesses who made an examination of the vessel five or six years later for the express purpose of minimizing the damages does not justify an appellate court in reversing a decree for damages against the offending vessel equal to the amount of the original appraisal, and which is also supported by other evidence.

Appeal from the District Court of the United States for the District of Minnesota.

Frank S. Masten and Herbert R. Spencer (Harvey D. Goulder, F. E. Searle, and S. H. Holding, on the brief), for appellants.

C. E. Kremer, for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge. This is an admiralty case which was before this court on appeal from the lower court at the December term, 1898. 37 C. C. A. 190, 94 Fed. 686. The case was fully stated in our previous opinion, for which reason we forego further statement. It will suffice to say at present that the Marine Insurance Company, Limited, of London, England, had paid a loss incurred under its policy on the Canadian schooner Minnedosa, that had sustained an injury in consequence of one of the perils of navigation in the Welland Canal. Having paid the loss, the insurance company claimed subrogation to the rights of the insured, and libeled the Canadian steamer Arabian, claiming that the injuries sustained by the schooner had been occasioned by the negligent handling of the steamer Arabian. On a trial had in the lower court, the libelant obtained a decree against J. B. and Hugh Fairgrieve, the claimants and owners of the Arabian, who are the present appellants. On the first appeal to this court it appeared that the libelant had only paid a loss to the amount of $8,051.20, while its libel contained an averment that the damage which had been sustained by the Minnedosa was more than $15,000. For this reason we held in our former opinion that the libelant could not maintain the libel as sole libelant,—following in that respect our previous decision in Norwich Union Fire Ins. Soc. v. Standard Oil Co., 8 C. C. A. 433, 59 Fed. 984,—as that would, in effect, permit separate actions to be maintained for the recovery of the damages incident to a single tort. We accordingly remitted the previous record to the lower court, saying in our opinion that when the record was returned to the district court it would be open to the libelant "to amend its libel and show, if it can, that the excess of damage over the sum for which it sues has been paid, released, or otherwise extinguished, so that the claimants are no longer liable to an action therefor at the suit of any one. In the

absence of some such showing, the libel will have to be dismissed."
37 C. C. A. 190, 192, 94 Fed. 686, 688. After the record was thus
returned to the district court the libel was amended, in pursuance of
the foregoing leave, by the addition of an allegation to the effect that
at the time the schooner Minnedosa was injured the Montreal
Transportation Company was the sole owner thereof, and the only
party in interest, except the libelant; that said company had author-
ized the libelant to file the libel and collect the amount which it had
paid to the transportation company on account of the injuries sus-
tained, and that at the time of the filing of said libel said transporta-
tion company made no claim whatever against the Arabian or her
owners on account of the injury; and that it had not and would not
thereafter make any such claim, or call upon the owners of the
Arabian for any further damages than those sought to be recovered
by the insurance company. In support of this averment it produced
and read at the trial the following release, which was duly executed
by the transportation company on September 21, 1899, in pursuance
of a resolution of its board of directors:

"Whereas, on the 22d day of October, 1892, the propeller Arabian, while
going up the Welland Canal, collided with and broke down the lock gates of
lock No. 4 of the Welland Canal, releasing the water from the level above
so that it came in a large volume against the barge Minnedosa, and forced
her against the wing wall of the lock below, damaging her to an amount
estimated at $15,000, of which sum the Marine Insurance Company, Limited,
paid, as an insurer on the hull of the said barge, the sum of $8,051.20, and
subsequently brought suit in the United States district court at Minnesota
against the said prop. Arabian to recover this sum: Now, in consideration of
the payment of the sum of one dollar, we do hereby forever release the said
propeller Arabian, her master and owners, from the payment of any and all
claims for damages sustained by said barge for any sum over and above the
said sum of $8,051.20 paid by the said Marine Insurance Company on account
of the said damages."

The lower court, being of the opinion on the second hearing, as it
was on the first, that the Arabian had been carelessly handled on the
occasion of the injury, entered a decree against the claimants on Oc-
tober 9, 1900, for the sum of $10,414.66, which included the estimated
damages, $8,000, and interest on that sum at 6 per cent. per annum
from September 28, 1895. It is this latter decree which is now before
the court for review.

On the present appeal it is contended, in the first place, that the
libelant, by its amendment, and by the proof adduced in support
thereof, has not brought itself within the terms of our mandate, in
that the evidence does not show that it had a cause of action when
the original libel was filed. It is suggested that our mandate did
not contemplate the acquisition of a new cause of action by the libel-
ant, and a suit thereon by way of an amendment of the original libel.
When the case was here originally this court refused to consider the
case on the merits, not because the libelant had no interest in the
cause of action, but because, on the showing then made, it appeared
that another party was likewise interested, or at least it did not ap-
pear affirmatively that such third party was not interested, and not
capable of libeling the Arabian in its own right. It was deemed

improper to proceed further with·the case in that condition, or until it was shown in some authentic manner whether the owner of ˙the Minnedosa was asserting a right of action against the Arabian, or was content with the sum which it had already received from the libelant. And because it seemed more than probable that it was satisfied with the sum paid by the insurer, and never had and never would assert a further claim for compensation, our previous decree was drawn advisedly in the form above shown to permit the libelant, by an amendment, to allege and prove that it was in fact the only real party in interest. We are of opinion that the amendment as made was within the terms of our mandate, and that the proof offered in support of it, and the time which has elapsed since the accident occurred, clearly show that the owner of the Minnedosa accepted the sum paid by the insurer as full compensation for the injury, and never has asserted or intended to assert a claim against the Arabian, so that when the original libel was filed the libelant was the sole party in interest, although the original libel failed to disclose that fact as clearly as it should have done. Moreover, we are of opinion that the formal release which was executed by the transportation company on September 21, 1899, as owner of the Minnedosa, that has now been brought upon the record, in view of all the circumstances attending its execution, will forever estop the transportation company from asserting any claim against the Arabian. It is true that the release was not executed at the request of the owners of the Arabian, nor for a consideration by them paid; but as it was executed to show that the transportation company asserted no claim against the steamer, and to enable this action to proceed in the name of the libelant as the sole party in interest, it will surely close the mouth of the transportation company in any court of justice, should it hereafter attempt to assert a claim which it has thus formally renounced.

The suggestion is also made in behalf of the appellants that the sureties in the stipulation which was filed to obtain the release of the Arabian cannot be holden for a different claim than the one asserted in the original libel, and hence that they are not bound by a decree rendered on the amended libel. This suggestion, however, impresses us as being entirely without merit, because the claim which was preferred originally is not different from the one preferred by the amended libel, but is the very same claim; the purpose of the amendment being to show that no one but the appellee has an interest in the claim. Besides, a stipulation in an admiralty cause for the release of property libeled is not subject to the rigid rules of the common law with respect to the liability of sureties. Such a stipulation takes the place of the released property, and the sureties therein become parties to the cause, and are bound by orders subsequently made therein to the same extent as the claimant. The Beaconsfield, 158 U. S. 303, 311, 312, 15 Sup. Ct. 860, 39 L. Ed. 993. The court had the power, therefore, to permit the amendment of the libel, in the form above shown, against the sureties as well as against the principal, and the decree is as binding upon the former as it is upon the latter.

This leaves for consideration the question, what were the damages, if any, which the schooner Minnedosa sustained? And it must be regarded as the principal question in the case, the others being of a more technical character. There is abundant testimony in the record which shows that as a result of the breaking of the lock gates on the occasion of the accident, whereby a large volume of water was suddenly released from the higher level, the Minnedosa was forced against the wing wall of the lock below, and by that means was bent or twisted to some extent. This is shown by the testimony of Capts. Taylor, Powers, Parsons, Charles, and the captain of the Minnedosa, all of whom saw the barge immediately after the accident, as well as by the testimony of some other witnesses. The fact that her hull was twisted or bent to some extent cannot be denied, on the evidence contained in the present record. It is true that there is a contrariety of opinion as to the extent to which the value of the barge was lessened in consequence of this misadventure. It appears, however, that the insurance company, immediately after it was notified of the accident, took the ordinary steps to ascertain the extent of the injury and the amount of the damage. Appraisers were appointed for this purpose, and their appraisement was approved by Capt. Parsons, who was employed to verify the appraisement; and after such steps had been taken, and not before, the libelant paid $8,000 to the owners of the barge, as compensation for the injuries sustained, without suit. These facts must be regarded as raising a very strong presumption that the vessel was in fact damaged to the extent claimed. Besides, it appears that as a result of the accident the rating of the schooner was changed from A1* to A1½. This change in the rating of the barge was due to injuries which the barge had sustained by reason of the accident, and the effect was to lessen her market value to the extent of $10,000 or $12,000. Now, the examination of the barge which was made by the appellants' witnesses was made some five or six years after the accident had occurred, and for the express purpose of minimizing the damages. Taking all these facts into consideration, we are of opinion that this court would not be justified in disturbing the finding and decree of the learned judge of the district court. It is probably as nearly right as any decree which could be formulated after this lapse of time.

It is accordingly ordered that it be affirmed.