## THE BENEFACTOR.

### SMITH & TERRY, Inc., v. CLINTON.

(District Court, E. D. Virginia. March 17, 1917.)

1. TOWAGE ⬥⇒9—TOWAGE SERVICE—BREACH OF EXECUTORY CONTRACT.
   A maritime lien does not attach against a vessel for breach of an executory contract for towage service, when the service was not actually rendered.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. § 9.]

2. SHIPPING ⬥⇒51—CHARTER—LIEN FOR TOWAGE SERVICE.
   A time charterer of a barge *held* entitled to a maritime lien for the service of a tug in towing her to a port, where she was abandoned because of unseaworthiness before the expiration of the charter term.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 203–210.]

3. MARITIME LIENS ⬥⇒9—TIME CHARTER—LIEN FOR DEAD FREIGHT.
   A time charterer of a coal barge *held* not entitled to a maritime lien against her for dead freight.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 13.]

4. SHIPPING ⬥⇒58(3)—CHARTER—DAMAGES FOR BREACH.
   A time charterer of a coal barge, which had subchartered it for the term at a profit to itself, *held* entitled to recover, as damages for breach of the charter by reason of the unseaworthiness of the barge, the profit it would have made from the subcharter, where that was no more than it could reasonably have expected to make under prevailing shipping conditions.

5. SHIPPING ⬥⇒58(3)—CHARTER—DAMAGES FOR BREACH.
   Libelant chartered a coal barge for three months, with the option of renewal for three months more; the owner agreeing to keep the barge in good condition. During the first term the barge was abandoned for unseaworthiness, and libelant did not exercise its option. *Held*, that it was not entitled to recover damages on account of the second term; there being no way of ascertaining what, if any, profit it would have made, even if it had exercised its option.

6. ADMIRALTY ⬥⇒66—PLEADING—AMENDMENT OF LIBEL.
   Libelant, as charterer, brought suit in rem against a barge to recover damages for breach of the charter. It also brought a suit in personam against the owner to recover damages for loss of its right to renew the charter for another term, in which another vessel belonging in part to

---

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the same owner was seized under foreign attachment, and he gave bond for its release. Subsequently, on exceptions to the libel, one claim for damages was withdrawn in the suit in rem for lack of lien, and was set up by an amended libel in the suit in personam. *Held*, that it was within the discretion of the court to allow the amendment, since all the claims arose from the same breach, and to award a decree thereon against the surety on the release bond.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 519–538.]

In Admiralty. Suits by the New York Disposal Corporation against the barge Benefactor, on libel and petition of Smith & Terry, Incorporated, and by Smith & Terry, Incorporated, against Joseph F. Clinton. Decrees for libelant, Smith & Terry, Incorporated, in both suits.

Edward R. Baird, Jr., of Norfolk, Va., for libelant.

Lewis Adler & Laws, of Philadelphia, Pa., and John W. Oast, Jr., of Norfolk, Va., for respondents.

WADDILL, District Judge. The controversy now before the court is between Smith & Terry, Incorporated, petitioners in the first-named case, a proceeding in rem against the barge Benefactor, and the same corporation, as libelant in the second case, a proceeding in personam against Joseph F. Clinton, owner of the Benefactor, and grows out of an alleged breach of charter party entered into on the 13th day of December, 1915, between said Clinton, owner of the Benefactor, as the party of the first part, and Smith & Terry, Incorporated, as the party of the second part, whereby the former chartered to the latter for a period of three months, with the option of an additional three months, the barge Benefactor, to transport coal between Hampton Roads, Philadelphia, and Sound ports, at an agreed price of $50 per day. The party of the first part was to furnish the proper crew, including captain, and pay all expenses connected with the barge, for wages, shipping fees, provisions, etc., and furnish a necessary towing hawser, and agreed to keep the barge in good order, and fitted for such work, during the period of service under the charter.

The cause of action arose from a breach of the charter party, because of the alleged unseaworthiness of the barge. The petitioner in the in rem proceeding makes five separate claims against the barge, as follows:

1. Bill of tug W. B. Keene, for loss of time...................... $ 300.00
2. Bill of Smith & Terry, Incorporated, owner of tug Underwriter, for loss of time......................................... 300.00
3. Bill of Smith & Terry, Incorporated, owner of tug Underwriter, for towing barge Benefactor from Providence, R. I., to New York. ................................................... 150.00
4. Bill for dead freight.......................................... 425.00
                                                                   ─────────
   Total ...................................................... $1,175.00

—together with (5) a claim for $3,351.50, being profits the libelant would have received during the first three months covered by the charter, from December 13, 1915, to March 13, 1916.

In the proceeding in personam libelant sought to recover the sum of $4,602.50, being profits that would have been made, as claimed, during the extended period of their option of three months from March 13,

1916, had not the barge proved unseaworthy; and in the in personam proceeding libelant has by an amended libel, also set up item No. 5, of $3,351.50, in the in rem proceeding—it being conceded that recovery for that amount cannot be maintained in the in rem proceeding.

The claims thus made depend on different considerations, and require that they be separately passed upon, which the court will do without undue elaboration.

[1] First. Claims 1 and 2, aggregating $600, for tug hire in connection with the cargo of coal taken before breach of the charter party because of unseaworthiness, presents the question whether a lien in rem attaches against a vessel for breach of an executory contract for towage service, when the service was not actually rendered. The right of lien under such circumstances does not exist under maritime law. Authorities to support this might be given almost without number. The Prince Leopold (C. C.) 9 Fed. 333; The Thomas P. Sheldon (D. C.) 113 Fed. 779, affirmed The S. L. Watson, 118 Fed. 952, 55 C. C. A. 439; The Francesco (D. C.) 116 Fed. 83—are cases which deal directly with this subject, and to them, and the cases therein cited, reference may be had as containing a full statement of the law on the subject.

Libelant insists that, conceding the law to be as stated by the court, they can nevertheless recover, as the liability for the $600 was incurred after the contract of towage had been entered upon; the barge having been brought from Philadelphia to Hampton Roads to receive the cargo. The court does not think that the bills covered by the $600 items can be affected by this towage service, whatever may have been the rights of the charterer, if any, to assert a claim for towing the barge from Philadelphia, which the libelant has not made.

[2] Second. Claim 3, for towage of the Benefactor from Providence, R. I., to New York, $150, should be allowed. The towage was actually performed, and the suggestions that the allowance should not be made because the charterers were obligated to return the barge to New York and that this service was not rendered on the faith of the barge, cannot be sustained under the facts of this case. The charterer, it is true, was required at the expiration of the charter period to return the barge to New York; but this expense was not incurred upon that theory at all, but was contracted for taking her back from her port of destination on the Sound, on her return trip, and before she had been abandoned because of unseaworthiness; and it likewise cannot be said that the charterer, while the barge was in its possession, and being actually towed by it, was not looked to as security for the expenses incurred in connection with the barge, while in their service.

[3] Third. This item of $425 is for dead freight, as follows: The charterers claim that the barge had a capacity of 1,350 tons of coal, whereas she only carried 1,180 tons, a shortage, or dead freight, of 170 tons, and that they therefore lost at $2.50 per ton on this deficiency, the sum of $425.

This contention of the petitioner cannot be maintained. In her then condition, 1,200 tons was, as the testimony shows, all she could safely carry. The explanation of the barge's master seems reasonable, that to have taken on another car of coal would have overloaded the barge,

and hence 1,180, instead of 1,200, tons were taken. Moreover, what is said regarding items 1 and 2, as to lack of a maritime lien to support those claims, largely applies here. The mere fact that the libelant claimed that, under its charter party, more coal might have been taken, does not give a lien for loss arising from failure to put it on board.

Fourth. The fifth item in the in rem proceeding, $3,351.50, as before stated, has been withdrawn, and asserted in the in personam proceeding, by amended libel which brings the court to the consideration of the in personam proceeding, and the right of the libelant to recover therein, either for the amount set up in the original libel, of $4,602.50, or in the amended libel, of $3,351.50. In considering this feature of the case, it must at the threshold be determined (1) whether any right of recovery exists, by reason of the unseaworthiness of the barge, and (2) whether the libelant is entitled to claim for estimated profits on what it would have made, had the option to extend the charter party for the second three months been taken up, assuming the barge to be seaworthy. These questions will be taken up in the order stated:

[4] (1) The court is convinced, upon full consideration of all the testimony in the case, that the barge was unseaworthy, and that the libelant was fully warranted in refusing to carry out the contract under the charter party, and that it is entitled to recover for losses sustained by reason of the unseaworthiness of the barge during the first three months of the contract, that is, from December 13, 1915, to March 13, 1916, and that the sum claimed, to wit, $3,351.50, is what it should reasonably recover by reason of the breach of the contract on the part of the respondent. During these three months the charterers had subchartered the barge at a profit to itself of $2.50 per ton, and respondent insists that he is not bound by these figures, and should not be held liable for the same; that he was in no way bound by the contract with the subcharterer, or party to the same, or had any knowledge thereof.

Assuming this position to be well taken, it would not alter the result, as $2.50 per ton is the profit that the libelant could reasonably have expected to make during the three months in question, taking into account the then condition of tug hire and other expenses incident to making the required voyage; and the court likewise finds that the libelant might reasonably have expected to make three voyages in addition to the one actually made during the three months in question.

[5] (2) Considering the claim for $4,602.50, covered by the original libel in personam, for estimated profits covering the three months extension period of the charter party, the court's conclusion is that the libelant is not entitled to recover any part of this item, for the reason that it did not avail itself of the right to extend the option for the additional three months, as contemplated by the charter party, and give to the respondent the notice required of such purpose to extend. Moreover, it does not follow that there would have been any profit during these latter months, had the option been taken up, in which event the libelant's right of recovery would have been for nominal damages only. Richard et al. v. Holman et al. (D. C.) 123 Fed. 734. And it is quite clear that during that period, namely, from the 13th of March to the 13th of June, 1916, no such profit as $2 per ton could have

been made in the then condition of freights for the transportation of coal between the ports covered by this charter.

[6] This brings us to the final question presented by the pleadings and proofs, as to whether or not the libelant is entitled to set up its claim for damages arising under the charter party, covering the first three months period, by an amended libel in the in personam proceedings. In support of this right, libelant cited Benedict's Admir. § 413; 1 Cyc. 860; McCready v. The Brother Jonathan, Fed. Cas. No. 8,732a; Davis v. Adams, 102 Fed. 520, 42 C. C. A. 493; The San Rafael, 141 Fed. 270, 72 C. C. A. 388.

Respondent insists that, notwithstanding these authorities, the general effect of which he does not especially controvert, it cannot be maintained that a different cause of action from that set up in the original libel can be interposed by amendment. The doctrine contended for, that an amendment should be limited to an elaboration of the claim already asserted, as distinguished from a new one, is undisputed; but in the judgment of the court it cannot be said that the claim asserted in the amended libel is of that character. All the claims stated in the in rem and in the in personam proceedings grow out of an alleged breach of the charter party aforesaid, which chartered the barge Benefactor to the libelant and petitioner, Smith & Terry, Incorporated. It first claimed, among other items in the in rem proceeding, for losses arising from the unseaworthiness of the barge during the first three months of the running of the charter period; and, secondly, in the in personam proceeding sought to recover damages for alleged loss of profits which it would have received during the three months of the extension period. The item for losses sustained during the first three months was, upon exception by the respondent to the libel, withdrawn from the in rem proceeding, and subsequently, by the amendment in question, set up in the in personam proceeding, and in which, by foreign attachment, another vessel, the Joseph F. Clinton, of which the respondent Joseph F. Clinton was one-fourth owner, was attached. The respondent specially appeared therein, claimed the vessel, gave bond, and caused the barge to be released, before the filing of the amended libel.

The court has, for reasons herein stated, denied to the libelant the right of recovery in the in personam proceeding for the amount of the original claim, that is, for damages for loss of profits arising during the extended period of the charter, and has awarded damages for the losses sustained during the first three months of the contract; and its conclusion is that the petitioner has the right to file the amended libel, and to assert in the in personam proceedings the claim for damages sustained during the first three months of the contract, as heretofore allowed.

The right of amendment is largely a matter of discretion (Wiggins Ferry Co. v. Railroad, 142 U. S. 396, 12 Sup. Ct. 188, 35 L. Ed. 1055; The Oregon, 158 U. S. 206, 15 Sup. Ct. 804, 39 L. Ed. 943; Davis v. Adams, 102 Fed. 520, 525, 42 C. C. A. 493; Richmond v. Copper Co., 20 Fed. Cas. 738), and the court does not believe that it would be in consonance with right and justice, or in accordance with the equitable principles of maritime law, to refuse the amendment, and deny to the

libelant any right of recovery in the case, either in the in rem or the in personam proceeding. The respondent should not be allowed to escape liability in the in rem proceeding because of the lack of a lien upon the res, and in the in personam proceeding to come in and litigate with the libelant its rights and liabilities under the charter party in question, and deny the libelant the right of amendment in the in personam proceeding, to assert its entire claim; that is, the one withdrawn in the in rem proceeding. This is more particularly true, since the respondent, notwithstanding his special appearance in the in personam proceeding, has filed therein a cross-libel asserting his right of recovery for an alleged breach of the charter, on the part of the libelant, for the sum of $4,160.59, which is in effect a waiver of the special appearance.

The court's conclusion is that the respondent is not entitled to any recovery on his cross-libel, for the damages sustained by breach of the charter, the same having been broken by the respondent owing to the unseaworthiness of the barge Benefactor, and that the libelant, Smith & Terry, Incorporated, is entitled to recover the amount set out in its amended libel, in the in personam proceeding against the defendant Joseph F. Clinton individually, and against the surety on the bond given for the release of the barge Clinton attached in these proceedings. The Palmyra, 12 Wheat. 1, 10; Newell v. Norton, 3 Wall. 266, 18 L. Ed. 271; The Beaconsfield, 158 U. S. 310, 15 Sup. Ct. 860, 39 L. Ed. 993; The Brother Jonathan, Fed. Cas. No. 8,732a; Boden v. Denwolf (D. C.) 56 Fed. 847; Fairgrieve v. Insurance Co., 112 Fed. 364, 50 C. C. A. 286, also on certiorari, 186 U. S. 484; Cyc. vol. 1, p. 860.

The bond given by the said Joseph F. Clinton for the release of his interest in the barge, being for the sum of $5,000, an amount in excess of the sum decreed in favor of the libelant, Smith & Terry, Incorporated, to wit, the sum of $3,351.50, a decree will be entered in its favor for the full amount of $3,351.50 in the in personam case, and for $150 in the in rem proceeding, with costs in the in personam case, and without costs in the in rem proceeding.