## CLINTON v. SMITH & TERRY, Inc.

## SMITH & TERRY, Inc., v. EBNER.

(Circuit Court of Appeals, Fourth Circuit.   January 25, 1918.)

### Nos. 1572, 1573.

1. MARITIME LIENS ⬙9—CHARTERS—LIEN—CLAIM FOR DEAD FREIGHT.
   A claim of a charterer for dead freight, which is in the nature of one for loss of profits, is not enforceable in a suit in rem as a lien on the vessel.

2. TOWAGE ⬙9—TOWAGE SERVICE—BREACH OF EXECUTORY CONTRACT—LIEN.
   That a charterer accepted delivery of a barge at a point distant from the place of loading, and had her towed there, did not make such transfer the beginning of a voyage under the charter, and the unaccepted offer of services by tugs before she was ready to proceed on her voyage did not give them a lien on the barge.

3. ADMIRALTY ⬙66—PLEADING—AMENDMENT OF LIBEL.
   The allowance of an amendment of the libel in a suit in personam, setting up an additional claim for damages growing out of the same alleged breach of charter, *held* within the discretion of the court.

4. SHIPPING ⬙58(3)—CHARTER—DAMAGES FOR BREACH.
   Where the charterer of a coal barge for three months, with the privilege of renewal for another like term, surrendered the barge during the first term for unseaworthiness, and did not exercise its option for renewal, it could not recover in a suit for breach of charter for loss of prospective profits during the renewal term.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suits in admiralty by Smith & Terry, Incorporated, against the barge Benefactor, John Ebner, master and claimant, and by Smith & Terry, Incorporated, against Joseph F. Clinton. Decree for libelant in the first suit, from which it appeals. Affirmed. From the decree in the second suit, both parties appeal. Modified and affirmed.

For opinion below, see 242 Fed. 582.

Francis S. Laws, of Philadelphia, Pa., and John W. Oast, Jr., of Norfolk, Va. (Lewis, Adler & Laws, of Philadelphia, Pa., on the brief), for Clinton and Ebner.

Edward R. Baird, Jr., of Norfolk, Va. (Baird & Swink, of Norfolk, Va., on the brief), for Smith & Terry, Inc.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. These cases were argued together and may be disposed of in one opinion. The following facts appear:

Smith & Terry, Incorporated, chartered the barge Benefactor for three months from December 13, 1915, with the option of three additional months, to carry coal from Hampton Roads to Sound ports. After one load had been taken from Newport News to Providence, the charterer canceled the contract and returned the barge to her owner on the ground that she was unseaworthy. Subsequently the charterer brought two actions in admiralty, one a libel in rem against

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the barge, and the other a libel in personam against the owner. In the in rem proceeding five items of damage were set up for which a lien was claimed, namely: (1) Cost of towing the barge from Providence to New York; (2) loss of time of a tug, which went to take the barge in tow at Hampton Roads before she was ready to go to sea; (3) loss of time of another tug, which also went to take her out before she was ready; (4) loss of profits on the difference between the number of tons which the barge carried on the trip mentioned and the number of tons which it is claimed she should have carried; and (5) loss of profits on the earnings of the barge for the three additional trips it is claimed she could have made, if seaworthy, within the first three-months period. The answers of the owner deny that the barge was unseaworthy and by way of cross-bill ask to recover the amount agreed to be paid for her use. Upon objections filed in the first action, the court below struck out the item of damage for loss of profits which the barge would have earned, if seaworthy, on the ground that it was not a lien on the barge. The other items were permitted to stand. The trial court, also, against the objection of the owner, permitted an amendment of the in personam libel, by which the item of loss of profits stricken from the in rem proceeding was inserted in the in personam proceeding. The cases were tried together, though not consolidated.

[1] Upon the evidence adduced the court below found as a fact that the barge was unseaworthy. It is enough to say that this finding is supported by adequate proof, and that no sufficient reason appears why it should not be accepted. In the in rem case the item for towing the barge from Providence to New York was allowed, and the correctness of that ruling is not challenged by assignment of error. The two items for loss of time by the tugs which went to take the barge in tow and found her not ready were disallowed, and that ruling will be presently considered. The "dead freight" item was likewise disallowed, because the court found that the number of tons carried by the barge on the trip she made was as great as she could reasonably carry. This finding also has the support of substantial evidence and should be accepted. Even if the fact were found otherwise we should feel constrained to hold 'that this item of damage, which is in the nature of prospective profits, is not sustainable as a lien on the barge. In the in personam case, and under the amended libel, the court awarded libelant the sum of $3,351.50 for profits which the barge, if seaworthy, would have earned during the first three months, but disallowed the claim for profits that would have been earned during the second three months. Both parties appeal.

[2] The libelant's claim of lien for the hire of tugs which offered to tow the barge before she was ready to go to sea is based on the contention that the service for which she was engaged had then been in some part performed, and therefore the contract was not wholly executory; this because the barge was delivered to the charterer at Philadelphia, and had to be moved from there to Lambert's Point to take on a cargo of coal. But the circumstance that the barge when hired was at a distance from the intended place of loading did not serve to make her transfer to that place the beginning of a voyage,.

or a partial performance of her undertaking. It was only the incident of her location when the charter party was signed. This being so, the unaccepted proffer of service by the tugs did not give them a lien on the barge, whatever claim they might have against the person that employed them. And if the tugs had no lien for mere loss of time, without any actual service, it seems manifest that libelant cannot recover for that loss in an in rem proceeding. We are of opinion that the two items in question were properly disallowed. The Francesco (D. C.) 116 Fed. 83; The Thomas P. Sheldon, 118 Fed. 952, 55 C. C. A. 439; The Rupert City (D. C.) 213 Fed. 263.

[3] It is insisted that the trial court erred in allowing the in personam libel to be amended in the manner above recited, but the argument is unconvincing. In our judgment this amendment did not introduce a new and independent cause of action, for the reason that both claims for loss of profits, one for the agreed three months and the other for the optional three months, grew out of the same alleged breach of the charter party, namely, in that the barge proved to be unseaworthy. It seems evident that the first of these claims, as well as the second, might have been set up in the original libel, since it was the proper subject of an in personam proceeding. As the matter stood, therefore, we do not perceive that the amendment operated in any wise to the prejudice of the owner, and the surety is not objecting. Moreover, the answer in this proceeding, which serves also as a cross-libel, seeks recovery from libelant for the stipulated hire of the barge and certain expenses incurred in putting her in repair. In short, we are satisfied that the allowance of the amendment was within the discretionary power of the court below and should not be held erroneous.

It was found by the trial court that the barge, if seaworthy, could have made three additional trips during the three months for which she was chartered. There was testimony to that effect, although the fact was in dispute, and we cannot say that the finding is unwarranted. It will therefore be assumed to be correct. The damages awarded for loss of profits were on the basis of $2.50 per ton of coal, that being the rate at which the barge was subchartered by libelant to another concern. This subcharter was entered into without the knowledge or consent of the owner, and consequently its terms were not binding upon him. Obviously, the charterer cannot recover from the owner, for the breach of his contract, any more than it was to get from the subcharterer, since that in any event would be the extent of its loss; and it cannot recover as much as the subcharterer was to pay, if when the breach occurred it could have hired another barge or procured equivalent tonnage at a lower rate. On conflicting testimony relating to this question, the trial court found in effect that the charterer could have obtained cargoes at an average of not less than $2.50 per ton during the three months for which the barge was hired. Accepting this finding, which seems to be justified, we cannot see that it was unfair to the owner or otherwise incorrect to assess damages on that basis.

But the amount awarded appears plainly excessive, because it assumes that the barge would have carried 1,350 tons on each of the

three additional trips she might have made during the three months in question, whereas the court has found, and we uphold the finding, that 1,200 tons was as much as she could safely carry. The estimate is therefore too great by 450 tons, which at $2.50 per ton would amount to $1,125, and the award must be reduced accordingly.

[4] We are of opinion that the trial court was right in rejecting libelant's claim for prospective profits during the optional three months. In point of fact, the option was not exercised by notice to the owner or by any act indicating a desire to retain the barge·after the first three months. Moreover, in our judgment, the cancellation of the charter party and return of the barge were in the circumstances tantamount to a declaration that the option would not be exercised, and no further comment seems to be necessary.

It follows that the decree in the in rem case should be affirmed, with costs. The decree in the in personam case should be modified, by deducting from the award of damages, the sum of $1,125, with interest from April 24, 1917, and, as thus modified, affirmed, but without costs to either party as against the other.