CORSICA TRANSIT CO. v. W. S. MOORE GRAIN CO.

THE CORSICA.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1918.)

No. 4950.

1. SHIPPING ☞51—BREACH OF CONTRACT FOR CHARTER—LIEN.

Act Cong. June 23, 1910 (Comp. St. 1916, § 7783), applies only to repairs, supplies, and other necessaries furnished the vessel at the home port, and does not give a lien for damages, for breach of contract, for a charter.

2. SHIPPING ☞51—CHARTER—BREACH BY OWNER—LIEN.

While liens on vessels which are of a maritime nature may be given by state statute which are not cognizable and enforceable under the general admiralty law, Gen. St. Minn. 1913, § 8318, declaring that every vessel used in navigating the waters of the state shall be liable for nonperformance of any contract of affreightment, etc., did not give a lien on a vessel used in navigating the waters of the Great Lakes for breach of a charter party to carry grain from Minnesota to Ohio.

3. SHIPPING ☞51—BREACH OF CONTRACT FOR CHARTER—LIEN.

An executory contract for the future employment of a vessel is not a maritime contract, and consequently a breach gives the charterer no lien.

4. MARITIME LIENS ☞16—POWER OF STATE—BREACH OF CHARTER.

A state has no power to grant a maritime lien against foreign vessels navigating the Great Lakes for causes of action which have never been recognized as maritime liens.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Libel by the W. S. Moore Grain Company against the steamer Corsica, claimed by the Corsica Transit Company. From a decree for libelant, claimant appeals. Reversed.

Frederick L. Leckie, of Cleveland, Ohio (Frank S. Masten and Holding, Masten, Duncan & Leckie, all of Cleveland, Ohio, on the brief), for appellant.

H. R. Spencer, of Duluth, Minn. (R. W. Spencer, of Duluth, Minn., on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This is an appeal from a decree in favor of the appellee in a proceeding in rem in admiralty. The libel was against the steamer Corsica, of which the appellant is the owner and claimant. The allegations in the libel, so far as they are material are that on or about September 14, 1915, the libelant at the city of Duluth, Minn., chartered said steamer for a cargo of wheat from the port of Duluth to Lake Erie ports, at the rate of 3½ cents per bushel, shipment to be made during the last half of October, 1915, at such times during said period as libelant might select. That the owners of said vessel refused to carry out that contract, after request from libelant, although it was ready and willing at all times to pay the carrying charges thereon. That by reason thereof libelant will suffer damages in the sum of

$5,000; that it has a statutory lien on the vessel for the damages sustained. The prayer for relief is the usual one in proceedings in rem in admiralty proceedings.

The appellee filed its claim of ownership of the vessel, and filed exceptions to the libel, alleging as ground that the allegations thereof do not disclose any admiralty or maritime claim or lien upon the vessel whereupon an attachment could be founded. The exception to the libel having been overruled an answer was filed by the claimant, and upon final hearing a decree in favor of libelant entered. In view of the conclusions reached by us it is unnecessary to set out the allegations in the answer or the proofs upon which the cause was heard.

[1, 2] The appellee makes no claim of a lien by virtue of the maritime law, but in the libel and argument claims a statutory lien under a statute of Minnesota. As the libel alleges that the charter of the boat was made in Duluth, in the state of Minnesota, and the cargo was to be delivered to the boat there, it is immaterial what the laws of the state of Ohio are, which were referred to in appellee's brief and oral argument. The statute of Minnesota, upon which the libelant relies, is section 8318, Gen. St. Minn. 1913, and so far as it is applicable to the issues in the case at bar is as follows:

"Every boat or vessel used in navigating the waters of this state shall be liable for the claims or demands hereinafter mentioned, and which shall constitute liens thereon. * * *

"(3) For all demands or damages accruing from the non-performance or malperformance of any contract of affreightment, or any contract touching the transportation of persons or property entered into by the master, owner, agent, or consignee of the boat or vessel on which such contract is to be performed."

Act Cong. June 23, 1910, c. 373, 36 St. 604, U. S. Comp. St. 1916, § 7783, applies only to repairs, supplies, and other necessaries furnished the vessel at the home port, and not to damages for a breach of contract for a charter, and therefore has no application to the issue involved in the instant case. The Rupert City (D. C.) 213 Fed. 263, 273; The Dredge A. (D. C.) 217 Fed. 617.

Does the statute of Minnesota, where the action was instituted, the contract made, the freight was to be furnished, and the contract performed, give such a lien, which may be enforced in an admiralty court, in a proceeding in rem against the vessel? That liens on vessels, which are of a maritime nature, may be given by state statutes, which are not cognizable and enforceable under the general maritime law may be conceded. The leading case on this subject in The Lottawanna, 21 Wall. 558, 22 L. Ed. 654, which has been consistently adhered to ever since. In The Robert W. Parsons, 191 U. S. 17, 24, 24 Sup. Ct. 8, 9 (48 L. Ed. 73) the court said:

"That a state may provide for liens in favor of materialmen for necessaries furnished to a vessel in her home port, or in a port of the state to which she belongs, though the contract to furnish the same is a maritime contract, and that such liens can be enforced by proceedings in rem in the District Courts of the United States, is so well settled by a series of cases in this court as to be no longer open to question."

But in all the cases the claims were of a nature which were maritime, but unenforceable in a court of admiralty, because furnished at the home port. A rule changed by the act of June 23, 1910.

What is the effect of the Minnesota statute? It will be noted that the statute is limited to "boats or vessels used in navigating the waters of this state." This statute has never been construed by the court of last resort of that state, but other courts, involving state statutes containing the same limitation, have held that it was clearly restricted to vessels "which are confined in their usual and substantial employment in the waters of the state." The Sea Witch, 1 Cal. 162; The Haytian Republic (D. C.) 65 Fed. 120. In The San Rafael, 141 Fed. 270, 280, 72 C. C. A. 388, 398, the court, referring to the California statute, held:

"Courts of admiralty do not get their jurisdiction from state statutes. Roach v. Chapman, 63 U. S. [23 How.] 129 [16 L. Ed. 294]. * * * That state Legislatures cannot restrict or extend the admiralty jurisdiction exclusively vested in the federal courts, said the court in the case of The H. E. Willard [D. C.] 53 Fed. 600. 'has been often decided and conclusively settled. * * * It follows, necessarily, that a lien given by a state statute is not the test of jurisdiction. If it were, a state Legislature might at pleasure modify the jurisdiction of the courts of admiralty by creating or abrogating liens not given by the maritime law.' The lien sought to be enforced in the present case is one given by the general maritime law."

Not only does the libel fail to allege that the libeled vessel is used in navigating the waters of the state of Minnesota but it expressly charges that the breach was the refusal to carry the grain offered at Duluth to the port of Sandusky, in the state of Ohio.

The Menominie (D. C.) 36 Fed. 197, which appellee cites as sustaining its contention, does not construe this act, but a former act, giving a lien for supplies, repairs, and material furnished, all of which are maritime liens, but an action therefor could not be maintained in a court of admiralty, if furnished at the home port.

[3, 4] But, aside from this, we are of the opinion that a state has no power to grant a maritime lien against foreign vessels, navigating, as alleged in the libel, the Great Lakes, for causes of action which have never been recognized as maritime liens. In The Chusan, 2 Story, 455, Fed. Cas. No. 2717, Mr. Justice Story held that such a statute of a state cannot apply to foreign vessels. It is true this opinion was delivered before the decision in the Lottawanna Case, holding that state statutes giving liens for materials and supplies furnished in a home port, which, if furnished in a foreign port, would be enforced in an admiralty court, if maritime liens. In The Lyndhurst (D. C.) 48 Fed. 839, 841, Judge Brown expressed a serious doubt, whether a state is competent to enact a statute affecting foreign vessels, and in The Advance (D. C.) 60 Fed. 766, the same learned judge held:

"To sustain a maritime lien, there must be in all cases, either in fact, or by presumption of law, a credit of the ship; and whenever such credit is negatived by the evidence, no such lien, whether maritime or statutory, will be recognized."

The same doubt was expressed in The Roanoke, 189 U. S. 185, 194, 23 Sup. Ct. 491, 47 L. Ed. 770, citing The Chusan and The Lyndhurst. A similar doubt was expressed in The America, 1 Lowell, 176, Fed. Cas. No. 289, by Judge Lowell. In a late case the Supreme Court has practically removed all doubt on that subject. In Southern Pacific Co. v. Jensen, 244 U. S. 205, 216, 37 Sup. Ct. 524, 529 (61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900) the court held:

"Equally well established is the rule that state statutes may not contravene an applicable act of Congress or effect the general maritime law beyond certain limits. They cannot authorize proceedings in rem according to the course in admiralty, * * * nor create liens for materials used in repairing a foreign ship"—citing The Roanoke, supra, and Workman v. New York City, 179 U. S. 552, 563, 21 Sup. Ct. 212, 45 L. Ed. 314.

In the last-cited case, after a careful review of the authorities, it was held that:

"The local decisions of a state court cannot as a matter of authority abrogate maritime laws."

Other cases to the same effect are The Electron, 72 Fed. 689, 695, 21 C. C. A. 12; Cuddy v. Clement, 113 Fed. 454, 51 C. C. A. 288; The Athinai (D. C.) 230 Fed. 1017, 1020; The Sagamore, 247 Fed. 743, 757, 159 C. C. A. 601; The Atlantic City, 220 Fed. 281, 284, 136 C. C. A. 297, Ann. Cas. 1915D, 50.

There are some authorities which hold that such state statutes are enforceable in admiralty against foreign vessels. It was so held by Judge Brown, while District Judge of Michigan, and later a Justice of the Supreme Court, in The J. F. Warner (D. C.) 22 Fed. 342. He was the same judge who delivered the opinion of the Supreme Court in The Roanoke, where he expressed a doubt on that subject, without referring to his earlier decision as District Judge. The only authority which holds that a state statute giving a lien on a vessel for breach of an executory contract is valid and is applicable to foreign vessels is The Energia (D. C.) 124 Fed. 842. It has never been followed by any other court and we are unable to follow it. In The Glide, 167 U. S. 606, 624, 17 Sup. Ct. 930, 934 (42 L. Ed. 296), the court only held that—

"The contract and the lien for repairs or supplies in a home port, under a local statute, are equally maritime, and equally within the admiralty jurisdiction."

Or, in other words, that a state may provide for a lien on a vessel for causes of action which are maritime.

An executory contract for the future employment of a vessel is not a maritime contract. The Schooner Freeman v. Buckingham, 59 U. S. (18 How.) 182, 188, 15 L. Ed. 341; Vandewater v. Mills, 60 U. S. (19 How.) 82, 90 (15 L. Ed. 554). It was there held:

"Consequently, if the master or owner refuses to perform his contract, or for any other reason the ship does not receive cargo and depart on her voyage according to contract, the charterer has no privilege or maritime lien on the ship for such breach of the contract by the owners, but must resort to his personal action for damages, as in other cases."

In Knapp, Stout & Company v. McCaffrey, 177 U. S. 638, 642, 20 Sup. Ct. 824, 827 (44 L. Ed. 921) after a learned review of the former decisions of the court, the following rules are deduced:

"That wherever any lien is given by a state statute for a cause of action cognizable in admiralty, either in rem or in personam, proceedings in rem to enforce such lien are within the exclusive jurisdiction of the admiralty courts. But the converse of this proposition is equally true, that if a lien upon a vessel be created for a claim over which a court of admiralty has no

*jurisdiction in any form, such lien may be enforced in the courts of the state."*

Other authorities in point are The Keokuk, 76 U. S. (9 Wall.) 517, 519, 19 L. Ed. 744; The Lady Franklin, 75 U. S. (8 Wall.) 325, 329, 19 L. Ed. 455; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345; Martin v. West, 222 U. S. 191, 197, 32 Sup. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592; The Benefactor (D. C.) 242 Fed. 582, 584, affirmed Clinton v. Smith & Terry, 249 Fed. 119, —— C. C. A. ——; The Thomas P. Sheldon (D. C.) 113 Fed. 779, 782, affirmed The S. L. Watson, 118 Fed. 945, 953, 55 C. C. A. 439.

But whatever doubt may have existed at one time, Southern Pacific Company v. Jensen, 244 U. S. 205, 216, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, has removed. See, also, The Samuel Marhall, 54 Fed. 396, 402, 4 C. C. A. 385. The death cases relied on by counsel for libelant do not sustain the contention that a state can make them a lien on foreign vessels for torts not maritime. The leading cases on this subject are The Hamilton, 207 U. S. 389, 28 Sup. Ct. 133, 52 L. Ed. 264, and La Bourgogne, 210 U. S. 95, 138, 28 Sup. Ct. 664, 52 L. Ed. 973. In La Bourgogne, it was held:

"It was settled in The Harrisburg, 119 U. S. 199 [7 Sup. Ct. 140, 30 L. Ed. 358] that no damages can be recovered in admiralty for the death of a human being on the high seas, or on the waters navigable from the seas, caused by negligence, in the absence of an act of Congress, or a statute of a state, giving the right of action therefor. As said in Butler v. Boston Steamship Co., 130 U. S. 555 [9 Sup. Ct. 612, 32 L. Ed. 1017], the maritime law of this country, at least, gives no such right. But in The Hamilton, 207 U. S. 398 [28 Sup. Ct. 133, 52 L. Ed. 264] it was also settled that where the law of the state to which a vessel belonged—in other words, the law of the domicil or flag—gives a right of action for wrongful death if such death occurred on the high seas on board of the vessel, the right of action given by the law of the domicil or flag will be enforced in an admiralty court of the United States as a claim against the fund arising in a proceeding to limit liability. As La Bourgogne was a French vessel, the question is, therefore, did the law of France give a right of action for wrongful death caused by the collision in question?"

This case does not sustain appellee's contention as the tort was maritime, committed on the high seas.

The cases sustaining the half pilotage laws are based on the ground, as expressed by the Supreme Court in Cooley v. Board of Wardens, 53 U. S. (12 How.) 299, 316, 13 L. Ed. 996, and Ex parte McNiel, 80 U. S. (13 Wall.) 236, 241, 20 L. Ed. 624, that such state laws existed ever since the adoption of the Constitution, and that Congress had recognized them by various acts, referring to the acts of August 7, 1789 (1 Stat. 54, c. 9 [Comp. St. 1916, § 7981]), of March 2, 1837 (5 Stat. 153, c. 22 [Comp. St. 1916, § 7982]), of July 13, 1866 (14 Stat. 93, c. 177 [Comp. St. 1916, § 7983]), and of February 25, 1867 (14 Stat. 412, c. 83).

To sustain a state statute giving a lien on a vessel, the cause of the action must be maritime in nature, and a breach of an executory contract for the charter of a vessel is not maritime in nature, and therefore cannot be enforced in a proceeding in rem in an admiralty court, but the party injured must seek redress by a common-law action.

We are of the opinion that the learned District Judge erred in overruling the claimant's exceptions to the libel and therefore the decree is reversed.

SMITH, Circuit Judge (concurring). Owing to the fact that it is not wholly clear to me that the reasons assigned in the foregoing opinion are sound, but being thoroughly satisfied from the whole record that the libelant is not entitled to recover, I simply concur in the result.